**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**
**MADISON DIVISION**

Milton Boyer and Kathy Boyer,

Plaintiffs,

v.

Weyerhaeuser Company, *a corporation;*
3M Company, *a corporation*;
Donaldson Company, Inc., *a corporation*;
Gardner Denver, Inc., *a corporation*;
Metropolitan Life Insurance Company*, a corporation*;
Owens-Illinois, Inc., *a corporation*;
Unknown Insurers of Owens-Illinois, Inc., *a corporation;*
Unknown Insurers of Roddis Plywood Corporation, *a corporation;*
Unknown Insurers of Weyerhaeuser Company, *a corporation;*

Defendants.

**COMPLAINT**

---

Plaintiffs Milton Boyer and Kathy Boyer, by and through their attorneys, Cascino Vaughan Law Offices, Ltd., complain against the above defendants as follows:

**JURISDICTION AND PARTIES**

1. Plaintiffs Milton Boyer and Kathy Boyer are adult citizens and residents of Marshfield, Wisconsin.

2. Plaintiffs are lawfully married. Unless otherwise stated herein, "plaintiff" when used in the singular refers to Milton Boyer.

3. Defendant Weyerhaeuser Company ("Weyerhaeuser") is the former owner of the Marshfield, Wisconsin door manufacturing plant ("Marshfield plant") where asbestos fireproofing products were manufactured and asbestos containing products were used in manufacturing production. Weyerhaeuser is legally responsible for the conduct of Roddis Plywood Corporation, the former owner and operator of the Marshfield plant.

4. Defendant 3M Company ("3M") designed, manufactured, and sold masks for personal breathing protection in occupational settings, including without limitation the 3M 8710.

5. Defendant Donaldson Company, Inc. ("Donaldson") is responsible for the conduct of Carter Day International Inc. ("Carter Day"). Carter Day designed, manufactured, and sold dust control devices, including without limitation bag-house dust collectors.

6. Defendant Gardner Denver, Inc. ("Gardner Denver") is responsible for the conduct of Clarkson Industries, Inc. ("Clarkson"). Clarkson designed, manufactured, and sold dust control devices.

7. Defendant Metropolitan Life Insurance Company ("MetLife") conspired and acted to conceal information about the health hazards of asbestos from both individual end-users and industry.

8. Defendant Owens-Illinois, Inc. ("O-I**"**) designed and sold licenses for a patent to manufacture of fire doors incorporating asbestos-containing cores. O-I also manufactured, sold, and designed asbestos products, including without limitation fire door cores. The brand name "Kaylo" was associated with both the patented doors and the cores.

9. Unknown Insurers of Owens-Illinois, Inc. are named pursuant to Wis. Stats. §803.04(2)(a)

as they have an interest in the outcome adverse to the plaintiffs.

10. Unknown Insurers of Roddis Plywood Corporation are named pursuant to Wis. Stats. §803.04(2)(a) as they have an interest in the outcome adverse to the plaintiffs.

11. Unknown Insurers of Weyerhaeuser Company are named pursuant to Wis. Stats. §803.04(2)(a) as they have an interest in the outcome adverse to the plaintiffs.

12. Jurisdiction is based on diversity of citizenship of the parties hereto under Title 28, United States Code, §1332.

13. The amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.

14. Venue is proper pursuant to Title 28, United States Code, §1391.

**GENERAL ALLEGATIONS**

15. The operations at the Marshfield plant involve cutting, sawing, and trimming of asbestos containing fire doors and cleanup, and disposal of the waste and scrap from such doors. At certain times the mixing of asbestos fibers to make the cores for the fire doors was a part of the manufacturing process.

16. Plaintiff inhaled airborne asbestos fibers released during operations at the Marshfield plant as a result of the following:

a. his employment at the Marshfield plant beginning in about 1973;

b. asbestos fibers contaminating the home, auto, lunchroom, and other locations where non-work related activities were performed;

c. asbestos fibers released from the Marshfield plant operations which contaminated the surrounding community;

d. transport of asbestos fibers from the Marshfield plant to other locations.

17. During the period of his exposures, plaintiff did not understand or appreciate the dangerous nature of asbestos and of the nature of the risks of asbestos.

18. As a direct and proximate result of the conduct of defendants, plaintiff suffered from the asbestos related disease malignant mesothelioma.

19. The asbestos disease process and injury began before April, 1994.

20. All exposures to asbestos that plaintiff received contributed to and caused the plaintiff's asbestos related conditions.

21. Plaintiff suffers great pain, physical impairment, and great mental pain and anguish. He is liable for large sums of money for medical and hospital care, and suffered losses to his personal property and possessions.

**COUNT I - PRODUCT LIABILITY - NEGLIGENCE**

22. Plaintiffs bring this claim for negligence and restate and re-allege the allegations in paragraphs 1 - 21 above.

23. Plaintiffs bring this claim against O-I and unknown insurers of O-I for

    a. designing fire doors and selling a license to manufacture such doors to Weyerhaeuser and;

    b. manufacturing and selling fire door cores to Weyerhaeuser.

24. The term "Kaylo fire doors" is used to collectively used to refer to both O-I patented doors and cores sold by O-I.

25. It was reasonably foreseeable to O-I that plaintiff and other workers working in or in proximity to Kaylo door manufacturing operations at Weyerhaeuser would inhale asbestos fibers released from the Kaylo doors during the manufacturing operations.

26. Defendant knew or in the exercise of ordinary or reasonable care ought to have known

asbestos causes serious and fatal disease.

27. Plaintiff did not know that asbestos products were dangerous or harmful at the time of his exposures.

28. Defendants had a duty to exercise reasonable care for the safety of plaintiff and others who worked with or were exposed to the defendants' asbestos products.

29. Defendant breached its duty of care and was negligent, including without limitation in one or more of the following acts or omissions:

a. Failed to adequately warn plaintiff or others of the health hazards of asbestos associated with Kaylo doors;

b. Failed to investigate or test for the health effects of asbestos in Kaylo doors;

c. Failed to instruct plaintiff, his employers, patent licensees, or others in the use of precautionary measures relating to airborne asbestos fibers released during production of Kaylo fire doors;

d. Defectively designed the Kaylo doors to incorporate asbestos as an ingredient or material in their manufacture when substitute materials were available.

30. As a direct and proximate result of the acts and omissions of the defendants above, the plaintiff was injured as described above.

**COUNT II – PRODUCT LIABILITY (UNREASONABLY DANGEROUS PRODUCT)**

31. Plaintiffs bring this claim for strict product liability and restate and re-allege the allegations in paragraphs 1 – 30 above.

32. This claim is asserted against O-I.

33. Defendant was in the business of selling Kaylo fire doors (including both patent rights and manufactured cores) and other asbestos containing products.

34. Defendant placed the Kaylo fire doors into the stream of commerce with the expectation

that they would reach plaintiff and other users and consumers without substantial change in the condition or design they were in when they left the possession or control of defendants.

35. Plaintiff was exposed to the defendants' Kaylo fire doors in the conditions in which they left the possession or control of such defendants.

36. Defendants' asbestos products were defective and unreasonably dangerous at the time they left the possession or control of defendants in one or more of the following ways:

a. Failed to adequately warn plaintiff or others of the health hazards of asbestos associated with Kaylo doors;

b. Failed to investigate or test for the health effects of asbestos in Kaylo doors;

c. Failed to instruct plaintiff, his employers, patent licensees, or others in the use of precautionary measures relating to airborne asbestos fibers released during production of Kaylo fire doors;

d. Defectively designed the Kaylo doors to incorporate asbestos as an ingredient or material in their manufacture when substitute materials were available.

37. As a direct and proximate result of the acts and omissions of the defendants above, the plaintiff was injured as described above.

**COUNT III – NEGLIGENT NUISANCE**

38. Plaintiffs incorporate by reference all general allegations above and brings this count against defendant Weyerhaeuser for negligent public and private nuisance.

39. Weyerhaeuser is responsible for the ownership and operation of the door manufacturing plant in Marshfield, Wisconsin during the period of plaintiff's exposures.

40. Weyerhaeuser, during operations to manufacture fire doors at the Marshfield plant beginning in the 1950s, caused asbestos fibers to be released and contaminate the air in various settings in which no work related activities were being conducted or the plaintiff was not engaged in work

related activities, including without limitation:

    a.  the community surrounding the plant;

    b.  homes and vehicles;

    c.  landfills; and

    d.  activities on the premises which were not work related.

41. The operations of Weyerhaeuser's Marshfield plant caused dangerous asbestos fibers to be transported to areas more distant through various means, including without limitation:

    a.  worker clothing, personal effects, hair, and skin which had become contaminated by asbestos fibers at the plant; and

    b.  collecting, removing, hauling, and dumping asbestos waste materials.

42. The plant emissions and transport of asbestos fibers as described above caused contamination of the community, housing, vehicles, lunchroom and other places frequented by plaintiff Milton Boyer.

43. Plaintiff and others inhaled asbestos fibers from the contaminated air and property.

44. The contamination by the asbestos fibers is an unreasonable interference with a right common to the general public to clean air.

45. The contamination by the asbestos fibers is an unreasonable interference with plaintiffs' private rights, including the right to use and enjoy private property.

46. The unreasonable interference with the plaintiff's private rights and property and the public's right to clean air is unrelated to any employment relationship or duties with defendant.

47. Weyerhaeuser Company had a duty to exercise reasonable care for the safety of plaintiff and the public from asbestos fibers released during Weyerhaeuser's operations of the Marshfield

plant or transported to other locations as a result of plant operations.

48. Weyerhaeuser knew or in the exercise of ordinary or reasonable care ought to have known asbestos causes disease and/or death.

49. Plaintiff did not know that asbestos or asbestos products were so dangerous or harmful at the time of his exposures.

50. Weyerhaeuser knew or in the exercise of ordinary or reasonable care ought to have known that Weyerhaeuser's Marshfield plant operations released asbestos into the community or resulted in transport of asbestos fibers to other locations as a result of plant operations.

51. Weyerhaeuser permitted the Marshfield plant operations to continue without abating the release into the community and transport to other locations of asbestos fibers.

52. Weyerhaeuser breached its duty of care and was negligent, including without limitation in one or more of the following acts or omissions:

    a. Failed to adequately warn plaintiff or others of the health hazards of asbestos;

    b. Failed to adequately investigate health effects of asbestos;

    c. Failed to adequately test for air levels of asbestos;

    d. Failed to adequately instruct plaintiff or others in the use of precautionary measures relating to airborne asbestos fibers;

    e. Used defectively designed asbestos-containing products when substitutes were available;

    f. Failed to use proper engineering techniques or methods, or used unsafe techniques or methods, in collecting, removing, hauling, and dumping of asbestos-containing materials.

    g. Violated agency regulations issued pursuant to the United States Occupational Safety and Health Act, 29 U.S.C. §651, et seq.

    h. Violated other agency regulations, including without limitation the United States

Environmental Protection Agency National Emission Standards for Hazardous Air Pollutants, adopted originally as Part 61, Chapter 1, Title 40 of the Code of Federal Regulations effective on April 6, 1971.

i. Violated regulations issued by the Wisconsin Industrial Commission, including without limitation General Orders on Dusts, Fumes, Vapors and Gases, Order 2002; And Wis. Adm. Code Ind 12.20;

j. Exceeded other air quality standards or guidelines, including without limitation the Wisconsin Division of Natural Resources and Threshold Limit Values of the American Conference of Governmental Industrial Hygienists; and

k. Failed to take corrective action after being put on notice of the above negligent acts.

53. The asbestos fibers caused special injury of asbestos related disease to plaintiff Milton Boyer.

54. The contamination by asbestos fibers from the Marshfield plant operations:

a. Adversely affected the health interests of the community at large;

b. Interfered with the public health and safety;

c. Interfered with the right of plaintiffs to enjoyment and use of their property.

55. As a direct and proximate result of the nuisance, the plaintiff was injured as described above

**COUNT IV – INTENTIONAL NUISANCE**

56. Plaintiffs incorporate by reference all general allegations above and brings this count against defendant Weyerhaeuser for intentional public and private nuisance.

57. Weyerhaeuser is responsible for the ownership and operation of the door manufacturing plant in Marshfield, Wisconsin during the period of plaintiff's exposures.

58. The operations of Weyerhaeuser's Marshfield plant caused release and emission of dangerous asbestos fibers which contaminated the air in the surrounding community where plaintiffs

lived.

59. The operations of Weyerhaeuser's Marshfield plant caused dangerous asbestos fibers to be transported to areas more distant through various means, including without limitation

    a.  contaminated worker clothing and personal effects; and

    b.  collecting, removing, hauling, and dumping asbestos waste materials.

60. The plant emissions and transport of asbestos fibers as described above caused contamination of the community, housing, vehicles, lunchroom and other places frequented by plaintiff Milton Boyer.

61. The contamination by the asbestos fibers is an unreasonable interference with a right common to the general public to clean air.

62. The contamination by the asbestos fibers is an unreasonable interference with plaintiffs' right to use and enjoyment of private property.

63. Plaintiff and others inhaled asbestos fibers from the contaminated air and property.

64. The unreasonable interference with the public right to clean air and the private property rights is unrelated to any employment relationship or duties with defendant.

65. Weyerhaeuser had knowledge of the dangers of asbestos fibers to cause serious diseases and death.

66. Weyerhaeuser created conditions and activities that released asbestos fibers into the community as a result of Weyerhaeuser's operations of the Marshfield plant and transport of asbestos fibers to other locations as a result of plant operations.

67. Weyerhaeuser knew that asbestos fibers were being released into the community and transported to other locations as a result of plant operations.

68. Weyerhaeuser knowingly, intentionally, and recklessly permitted the Marshfield plant operations to continue without abating the release into the community and transport to other locations of asbestos fibers.

69. Plaintiff Milton Boyer suffered the special injury of asbestos related disease.

70. The contamination by asbestos fibers from the Marshfield plant operations:

d. Adversely affected the health interests of the community at large;

e. Interfered with the public health and safety;

f. Interfered with the right of plaintiffs to enjoyment and use of their property.

71. The conduct of Weyerhaeuser created an intentional nuisance for Weyerhaeuser is liable to plaintiffs for the injuries as described above.

**COUNT V – PRODUCTS LIABILITY – STRICT LIABILITY**

72. Plaintiffs bring this claim for strict liability against defendants Donaldson and Gardner Denver.

73. Plaintiffs restate and re-allege the allegations set forth in lines 1-58 above.

74. Defendants were at all relevant times in the business of selling dust control devices.

75. Defendants placed their dust control devices into the stream of commerce with the expectation that they would reach plaintiff and other users and consumers without substantial change in the condition they were in when they left the possession or control of defendants.

76. Defendants designed, manufactured, and/or sold dust control devices that malfunctioned or otherwise failed to adequately control dust, exposing plaintiff to asbestos dust at the Marshfield plant and in the surrounding environment.

77. Defendants' dust control devices were defective and unreasonably dangerous at the time they

left the possession or control of defendants in one or more of the following ways:

a. Failed to adequately warn plaintiff or others of the health hazards of asbestos which existed during operation of the dust control devices;

b. Failed to investigate or test for the effectiveness of the dust control devices for preventing exposure to asbestos fibers;

c. Failed to instruct plaintiff, his employers, or others in the use of precautionary measures relating to airborne asbestos fibers released during the operation of the dust control devices;

d. Defectively designed the dust control devices such that they did not adequately protect against or prevent exposure to asbestos fibers;

78. As a direct and proximate result of the acts and omissions of the defendants above, the plaintiff was injured as described above.

**COUNT VI – PRODUCTS LIABILITY – NEGLIGENCE**

79. Plaintiffs bring this cause of action for negligence against defendants Donaldson and Gardner Denver.

80. Plaintiffs restate and re-allege the allegations set forth in lines 1-65 above.

81. It was reasonably foreseeable that defendants' dust control devices would be used to control asbestos-containing dust.

82. Defendants knew the dust control devices were being used for control of emissions during removal and disposal of asbestos containing materials.

83. Defendants represented or held out the dust control devices to be effective in the control of emissions during removal and disposal of asbestos containing materials generated during the type of operations at the Marshfield plant.

84. The dust control devices did not properly control the release of asbestos fibers during the

removal and disposal of asbestos containing material at the Marshfield facility.

85. Defendants had a duty to exercise reasonable care for the safety of plaintiff and others when defendants' dust control devices were used to protect against emissions during removal disposal of asbestos containing waste materials.

86. Defendants knew or in the exercise of ordinary or reasonable care ought to have known asbestos causes disease and/or death and that the dust control devices were not effective in the control of emissions during removal and disposal of asbestos containing materials generated during the type of operations at the Marshfield plant.

87. Each defendant breached its duty of care and was negligent, including without limitation in one or more of the following acts or omissions:

a. Failed to adequately warn plaintiff or others of the health hazards of asbestos which existed during operation of the dust control devices;

b. Failed to investigate or test for the effectiveness of the dust control devices for preventing exposure to asbestos fibers;

c. Failed to instruct plaintiff, his employers, or others in the use of precautionary measures relating to airborne asbestos fibers released during the operation of the dust control devices;

d. Defectively designed the dust control devices such that they did not adequately protect against or prevent exposure to asbestos fibers.

88. As a direct and proximate result of the acts and omissions of the defendants above, the plaintiff was injured as described above.

**COUNT VII – PRODUCTS LIABILITY – STRICT LIABILITY**

89. Plaintiffs bring this claim for strict liability against defendant 3M.

90. Plaintiffs restate and re-allege the allegations set forth in lines 1-75 above.

91. Defendant was at all relevant times in the business of selling personal protective equipment,

including without limitation masks.

92. Defendants knew and expected the masks would be used to protect against the inhalation of asbestos fibers.

93. Defendant placed its masks into the stream of commerce with the expectation that they would reach plaintiff and other users and consumers without substantial change in the condition they were in when they left the possession or control of defendants.

94. Defendant's masks reached plaintiff without substantial or unforeseeable change in the condition in which it was sold.

95. Plaintiff used defendant's masks in the condition in which they left the possession or control of such defendants.

96. Defendant's masks was defective and unreasonably dangerous at the time it left the possession or control of defendants in one or more of the following ways:

a. Failed to adequately warn plaintiff or others of the health hazards of asbestos which existed when wearing defendant's masks;

b. Failed to investigate or test for the effectiveness of the masks in preventing the inhalation of asbestos fibers;

c. Failed to instruct plaintiff, his employers, or others about the inadequacies of using the masks as precautionary measures against airborne asbestos fibers;

d. Defectively designed such that the masks did not adequately protect against or prevent exposure to asbestos fibers;

a. Failed to specify or instruct in the proper use of the masks.

97. As a direct and proximate result of the acts and omissions of the defendants above, the plaintiff was injured as described above.

**COUNT VIII – PRODUCTS LIABILITY – NEGLIGENCE**

84. Plaintiffs bring this claim for negligence against defendant 3M.

85. Plaintiffs restate and re-allege the allegations set forth in lines 1-84 above.

86. It was reasonably foreseeable that defendant's personal protective masks would be used to prevent exposure to asbestos.

87. Defendants knew and expected the masks would be used to protect against the inhalation of asbestos fibers.

88. Defendants represented or held out the masks to be adequate in the protection against inhalation of asbestos fibers during the type of operations at the Marshfield plant.

89. The masks did not properly protect against inhalation of asbestos fibers from the operations at the Marshfield facility.

90. Defendant had a duty to exercise reasonable care for the safety of plaintiff and others who used defendants' personal protective equipment to protect against exposure to asbestos fibers.

91. Defendant knew or in the exercise of ordinary or reasonable care ought to have known asbestos causes disease and/or death.

92. Defendant breached its duty of care and was negligent, including without limitation in one or more of the following acts or omissions:

a. Failed to adequately warn plaintiff or others of the health hazards of asbestos which existed when wearing defendant's masks;

b. Failed to investigate or test for the effectiveness of the masks preventing the inhalation of asbestos fibers;

c. Failed to instruct plaintiff, his employers, or others about the inadequacies of using the masks as precautionary measures against airborne asbestos fibers;

d. Defectively designed its personal protective equipment such that it did not adequately protect against or prevent exposure to asbestos fibers;

a. Failed to specify or instruct in the proper use of the masks.

93. As a direct and proximate result of the acts and omissions of the defendants above, the plaintiff was injured as described above.

**COUNT IX – CIVIL CONSPIRACY**

94. Plaintiffs bring this cause of action for civil conspiracy against defendant Metropolitan Life Insurance Company.

95. Plaintiffs restate and re-allege the allegations set forth in lines 1 – 94 above.

96. Defendant Metropolitan Life and other unnamed co-conspirators knowingly and willfully combined, agreed, and conspired with each other for the purpose of accomplishing one or more of the following unlawful purposes:

a. Suppressing information about the health hazards of asbestos, including medical and scientific data, from those persons who would be exposed to the asbestos from the products made and sold by the conspirators,

b. Affirmatively asserting, in a manner not warranted by the information possessed by the conspirators, claims that the conspirators knew were false, namely, that it was safe to work with and in close proximity to asbestos.

97. One or more of the conspirators, including Metropolitan Life, performed the following tortious acts in furtherance of the conspiracy:

a. Failed to warn about health hazards of asbestos; failed to investigate health hazards of asbestos;

b. interfered with scientific and medical studies about the health hazards of asbestos; or

c. failed to instruct about precautionary measures required for protection.

98. As a direct and proximate result of the acts of the conspiracy described above, the plaintiff was injured as described above.

**COUNT X – PUNITIVE DAMAGES**

99. Defendants acted maliciously, with intentional disregard for the rights of plaintiffs for which plaintiffs are entitled to recover punitive damages.

**COUNT XI - DECLORATORY JUDGMENT – UNCONSTITUTIONAL**

100. In 1995 Wisconsin enacted Act 17 which created restrictions on recoveries by victims of personal injuries.

101. In 2011 Wisconsin enacted Act 2 which created restrictions on recoveries by victims of personal injuries.

102. On March 27, 2014 Wisconsin enacted 2013 Act 154 which imposes requirements and creates restrictions on victims of asbestos-related injuries.

103. Plaintiffs seek a declaration that retroactive application of 2005 Act 155 and 2011 Act 2 to limit the recovery in this case is unconstitutional.

104. Plaintiffs seek a declaration that 2013 Act 154 is not applicable to this case or, in the alternative, that the requirements and restrictions it creates are unconstitutional.

**PRAYER FOR RELIEF**

Plaintiffs pray for relief as follows:

a. Judgment against defendants, jointly and severally, for compensatory and general damages.

b. Punitive damages in an amount to be determined against each defendant.

c. A declaration that 1995 Act 17 and 2011 Act 2 are unconstitutional as applied to this case.

d. A declaration that 2013 Act 154 is not applicable to this case, or, in the alternative, that the requirements and restrictions it creates are unconstitutional.

e. Such further legal and equitable relief as the court orders to do justice in this case, including without limitation award of costs and disbursements of this action.

**JURY TRIAL DEMAND**

Plaintiffs hereby demands a trial by a jury.

Dated: April 18, 2014

/s/ Michael P. Cascino
Attorney for Plaintiff

Michael P. Cascino
Robert G. McCoy
Cascino Vaughan Law Offices, Ltd.
220 S. Ashland Avenue
Chicago, Illinois 60607
Phone: 312.944.0600
Fax: 312.944.1870
Email1: ecf.cvlo@gmail.com
Email2: mcascino@cvlo.com
Email3: bmccoy@cvlo.com

# Exhibit A

Defendants' States of Incorporation and Principal Places of Business

| **Defendant** | **State of Incorporation** | **State of Principal Business** |
|---|---|---|
| 3M Company | Delaware | Minnesota |
| Donaldson Company, Inc. | Delaware | Minnesota |
| Gardner Denver, Inc. | Delaware | Pennsylvania |
| Metropolitan Life Insurance Company | Delaware | New York |
| Owens-Illinois Inc. | Delaware | Ohio |
| Weyerhaeuser Company | Washington | Washington |