

Brian O. Watson
312.258.5845
bwatson@schiffhardin.com

233 SOUTH WACKER DRIVE
SUITE 6600
CHICAGO, ILLINOIS 60606

*t* 312.258.5500
*f* 312.258.5600
www.schiffhardin.com

June 4, 2014

**VIA CM/ECF FILING**

Hon. Stephen L. Crocker
United States Magistrate Judge
United States District Court for the
     Western District of Wisconsin
120 N. Henry Street, Room 540
Post Office Box 591
Madison, WI 53703

      Re:    **Asbestos-Related Cases Filed By**
                    **Cascino Vaughan Law Offices, Ltd.**

Dear Magistrate Judge Crocker:

     In compliance with the Court's Order of May 29, 2014, Owens-Illinois, Inc. ("Owens-Illinois") respectfully submits this letter about the asbestos-related cases filed and likely to be filed in this Court by Cascino Vaughan Law Offices, Ltd. ("CVLO").

**I.     CVLO Asbestos-Related Lawsuits**

     The Clerk of Court for the Western District of Wisconsin shows 13 open asbestos-related lawsuits filed by CVLO.[1]  In 2014 CVLO has filed seven of these cases, and the remaining six cases were remanded from MDL 875.  Since 1990, CVLO has filed in this Court at least 164 cases — nearly all of which were terminated during the last five years in MDL 875.

     Five years ago, there were approximately 5,000 CVLO asbestos-related cases pending in MDL 875.[2]  The cases sat dormant for years and unprosecuted by CVLO.  Currently, however,

---

[1] *Boyer*, No. 3:14-cv-00286-wmc; *Connell*, No. 3:05-cv-00219-bbc; *Esser*, No. 3:01-cv-00071-wmc; *Lorentz*, No. 3:98-cv-00237-bbc; *Masephol*, No. 3:14-cv-00186-wmc; *Pecher*, No. 3:14-cv-00147-jdp; *Prust*, No. 3:14-cv-00143-wmc; *Rickey*, No. 3:99-cv-00547-bbc; *Schmoll*, No. 3:98-cv-00693-jdp; *Seehafer*, No. 3:14-cv-00161-wmc; *Suoja*, No. 3:99-cv-00475-bbc; *Sydow*, No. 3:14-cv-00219-bbc; *Zickert*, No. 3:14-cv-00254-bbc.

[2] *See In re Asbestos Prods. Liab. Litig. (No. VI)*, 278 F.R.D. 126, 128 (E.D. Pa. 2011) (explaining factual and procedural history); *In re Asbestos Prods. Liab. Litig. (No. VI)*, No. MDL 87, 2012 WL 6739912, at *1-2 (E.D. Pa. Dec. 2012) (same).



Hon. Stephen L. Crocker
June 4, 2014
Page 2

the Clerk of Court for the Eastern District of Pennsylvania shows only about 90 of those CVLO cases are still open.  The vast majority of these cases were dismissed — mostly by voluntary dismissal — after consolidated pretrial proceedings and hundreds of discovery and dispositive orders.[3]  Indeed, the MDL 875 court explained the history of these CVLO cases in a published order and found that "[w]hile we hesitate to assign willfulness to any counsel who appears before us representing truly injured parties, we have no difficulty making such a conclusion here where CVLO, throughout the litigation of these cases, has been repeatedly reminded of its obligations to follow the scheduling orders and to provide complete and timely discovery."[4]

As noted above, some CVLO cases have been remanded after pretrial proceedings to their transferor courts.  In the Northern District of Illinois, the court held a *Daubert* hearing on Owens-Illinois's motions on March 21, 2014, and vacated the trial date pending the court's *Daubert* ruling.[5]  CVLO has also tried three remanded cases in the last year: (1) *Bushmaker* was tried in this Court with the defendant filing for bankruptcy during trial; (2) *Wright* was tried to verdict in the Northern District of Illinois with the jury finding that plaintiff was 95% contributory negligent and assessing damages of $8,750;[6] and (3) *Kinser* was tried to verdict in the Central District of Illinois with the jury finding against plaintiff and in favor of the defendant.[7]

In this Court, the CVLO trial settings are currently as follows:

| Trial Dates | Cases |
|---|---|
| 7/13/2015 | *Seehafer v. Weyerhaeuser Co. et al.*, No. 3:14-cv-00161-wmc |
| 8/3/2015 | *Suoja v. Owens-Illinois, Inc.*, No. 3:99-cv-00475-bbc |
| 8/31/2015 | *Rickey v. Georgia-Pacific LLC*, No. 3:99-cv-00547-bbc |
| 10/5/2015 | *Schmoll v. Owens-Illinois, Inc.*, No. 3:98-cv-00693-jdp |
| 11/2/2015 | *Connell v. Owens-Illinois, Inc.*, No. 3:05-cv-00219-bbc |
| 11/30/2015 | *Prust v. Weyerhaeuser Co. et al.*, No. 3:14-cv-00143-wmc |

---

[3] *See generally* MDL 875, Information for Cases Represented by Cascino Vaughan Law Offices, *available at* www.paed.uscourts.gov/mdl875r.asp (last visited June 4, 2014).

[4] *In re Asbestos Prods. Liab. Litig. (No. VI)*, 289 F.R.D. 424 (E.D. Pa. Apr. 3, 2013).

[5] Order 1-2, *Krik v. Crane Co.*, No. 10-cv-7435 (N.D. Ill. Mar. 21, 2014), attached as Ex. A.

[6] Verdict Form B, *Wright v. CBS/Westinghouse*, No. 11-cv-1954 (N.D. Ill. May 22, 2013), attached as Ex. B.

[7] Verdict Form A, *Kinser v. CBS/Westinghouse*, No. 94-cv-02282 (C.D. Ill. Jan. 24, 2014), attached as Ex. C.



Hon. Stephen L. Crocker
June 4, 2014
Page 3

## II.    <u>Marshfield-Related Lawsuits</u>

In particular, CVLO has seven cases pending in this Court against Owens-Illinois involving a door plant in Marshfield, Wisconsin, owned and operated by Roddis Plywood Corporation and later by Weyerhaeuser Company.[8]  CVLO alleges claims — which have no foundation in Wisconsin law and are subjected to pending motions to dismiss — based on a nonexclusive patent license from Owens-Illinois to Roddis and Weyerhaeuser of U.S. Patent No. 2,593,050 (filed Jan. 24, 1952).  No Wisconsin case has ever recognized a product liability action against a patent licensor.  This theory has no basis, and CVLO's allegations contravene Wisconsin law and patent law.

Moreover, CVLO has represented that it has nothing (other than the '050 patent license) that shows any connection between Owens-Illinois and this Marshfield plant:

> MR. CASCINO:  We have no documents. And if we do, there may be one or two invoices I saw, but I don't even believe, my legal assistant's saying no, shaking his head no is that there are none.
>
> So the only thing we have are, again, is what Riley provided us, which was an affidavit by him saying that they did have a process patent.
>
> THE COURT:  Okay. Well we will take that then as your representation with respect to having searched the materials, and you're telling me then you see nothing that shows any specific kind of connection, other than what you said with respect to information you have for Mr. Riley that I presume Mr. Casmere is aware of.
>
> MR. CASCINO:  Yes, Your Honor. That's true.[9]

CVLO is well aware of the companies that sold the asbestos and asbestos-containing products to this door plant in Marshfield, Wisconsin.  Those companies are Johns Manville and Owens Corning Fiberglas, which declared bankruptcy due to their asbestos-related liabilities in 1982 and 2000, respectively.  Indeed, nearly 100 companies have sought protection from the tort

---

[8] *Boyer*, No. 3:14-cv-00286-wmc; *Masephol*, No. 3:14-cv-00186-wmc; *Pecher*, No. 3:14-cv-00147-jdp; *Prust*, No. 3:14-cv-00143-wmc; *Schmoll*, No. 3:98-cv-00693-jdp; *Seehafer*, No. 3:14-cv-00161-wmc; *Sydow*, No. 3:14-cv-00219-bbc.

[9] Hr'g Tr. 8:19-9:7, *Seehafer v. Weyerhaeuser Co.*, No. 14-CV-00059 (E.D. Pa. Jan. 13, 2014), attached as Ex. D.  Robert H. Riley is an attorney at Schiff Hardin LLP, and he did not provide such an affidavit.



Hon. Stephen L. Crocker
June 4, 2014
Page 4

system through bankruptcy — including the largest manufacturers, like Johns Manville and Owens Corning Fiberglas — and they have set aside more than $36.8 billion in trusts to pay personal injury settlements.[10]

CVLO and its plaintiffs submit claims to these personal injury trusts for compensation. In fact, Wisconsin passed special legislation in 2014 and created Wis. Stat. § 802.025 to provide transparency and prevent double recoveries from these trusts. Owens-Illinois is, and always has been, a glass company. As a fringe manufacturer and seller of high temperature thermal insulation products only from 1948 to 1958, Owens-Illinois is not responsible for the conduct by other, primarily bankrupt, companies, and there is no viable product liability cause of action for licensing intellectual property.

### III.   Suggestions for These Lawsuits

To process these cases, Owens-Illinois respectfully suggests that the Court enforce the Federal Rules of Civil Procedure and establish coordinated pretrial proceedings. The process and outcome of these cases will turn on whether the Plaintiffs are required to meet their burdens in the same manner, and to the same extent, as any other tort plaintiff. Experience suggests that the Plaintiffs will seek to avoid, not meet, their burdens in the apparent belief that, because this is an asbestos case, they are entitled to special dispensations — no matter whom they have sued or on what basis.

The myth that injured asbestos-related plaintiffs are somehow entitled to special, reduced burdens of proof, procedural shortcuts, and relaxed evidentiary standards has no foundation in law or sound policy. The substantive, procedural, and evidentiary rules are well-established, and they are the same rules that apply in every other federal case. In order "to secure the just, speedy, and inexpensive determination," Fed. R. Civ. P. 1, Owens-Illinois provides the following suggestions:

- expedited briefing schedules on the pending motions to dismiss;
- coordinated pretrial discovery, including joint medical records collection orders, joint bankruptcy records collection orders, and limited 30(b)(6) depositions;
- consolidated *Daubert* hearings;
- individual trial dates with sufficient spacing between trials;
- a prohibition of setting numerous trials and switching the scheduled trials among the plaintiffs.

---

[10] *See In re Garlock Sealing Techns., LLC*, 504 B.R. 71 (W.D.N.C. Bkrtcy. 2014); U.S. Gov't Accountability Office, *Asbestos Injury Compensation: The Role and Administration of Asbestos Trusts* (Sept. 2011), *available at* www.gao.gov/assets/590/585380.pdf (last visited June 4, 2014).



Hon. Stephen L. Crocker
June 4, 2014
Page 5

Thank you for the opportunity to submit this letter and for the Court's consideration.

Respectfully submitted,

SCHIFF HARDIN LLP

/s/ Brian O. Watson

Brian O. Watson

*Attorneys for Owens-Illinois, Inc.*

15640-1246
CH2\14814303.7

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES KRIK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 10-cv-7435 |
| v. | ) | |
| | ) | Judge John Z. Lee |
| CRANE CO.; EXXONMOBIL OIL | ) | |
| CORPORATION; OWENS-ILLINOIS, | ) | |
| INC.; and THE MARLEY-WYLAIN | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Defendants have filed the following *Daubert* motions in this case: (1) Crane Company's Motion to Exclude the "Each and Every Exposure Opinion" (dkt. 62); (2) Crane Company's Motion to Preclude the Testimony of Dr. Barry Castleman (dkt. 63); Owens-Illinois' Motion to Exclude Barry Castleman (dkt. 64); Owens-Illinois' Motion to Bar the Longo/MAS Experiments and Related Testimony (dkt. 65); Owens-Illinois' Motion to Bar the "Any Exposure" Opinion (dkt. 66); BP America's Motion to Bar Expert Opinions of Dr. Arthur Frank and Frank Parker (dkt. 67); Marley-Wylain's Motion to Exclude Plaintiff's Experts From Testifying Regarding the "Single Fiber" Theory (dkt. 71); and ExxonMobil Oil's Motion to Bar Testimony of Arthur Frank and Frank Parker (dkt. 76).

After further consideration of the voluminous motions and related materials, the Court concludes that oral argument with respect to these motions would aid the Court in resolving these multiple motions. Accordingly, the Court schedules oral argument on 4/8/14 commencing at 2:00 p.m. The Defendants should coordinate with one another to minimize any duplicative arguments. The Court also will discuss issues related to the proposed pre-trial order and related submissions at that time. In light of the foregoing, the pre-trial conference dates of 4/10/14, 4/17/14, and 4/18/14, and the trial date of 4/28/14, are hereby stricken. Given that the trial date is stricken, Plaintiff's motion to take deposition of industrial hygiene expert Frank Parker (dkt. 276) is denied without prejudice at this time. The *Daubert* motions (dkt. 62, 63, 64, 65, 66, 67, 71, 76) are hereby taken under advisement pending oral argument.

An agenda for the 4/8/14 hearing is attached.

Dated: March 21, 2014                    /s/ John Z. Lee
                                         U.S. District Court Judge

<u>**Agenda**</u>

**April 8, 2014**

Crane Company's Motion Re: "Each and Every Exposure Opinion" (dkt. 62)
Owens-Illinois' Motion Re: "Any Exposure" Opinion (dkt. 66)
BP America's Motion Re: Dr. Arthur Frank and Frank Parker (dkt. 67)
Marley-Wylain's Motion Re: "Single Fiber" Theory (dkt. 71) &
<u>ExxonMobil Oil's Motion Re: Arthur Frank and Frank Parker (dkt. 76)</u>:

| | |
|---|---|
| Defendants' (collective) argument | 30 minutes |
| Plaintiff's argument | 30 minutes |
| Defendants' rebuttal | 5 minutes |

Crane Company's Motion Re: Castleman (dkt. 63) &
<u>Owens-Illinois' Motion Re: Castleman (dkt. 64)</u>:

| | |
|---|---|
| Defendants' (collective) argument | 15 minutes |
| Plaintiff's argument | 15 minutes |
| Defendants' rebuttal | 5 minutes |

<u>Owens-Illinois' Motion Re: Longo/MAS Experiments (dkt. 65)</u>:

| | |
|---|---|
| Defendants' (collective) argument | 15 minutes |
| Plaintiff's argument | 15 minutes |
| Defendants' rebuttal | 5 minutes |

# EXHIBIT B

**FILED**

MAY 2 2 2013

JUDGE REBECCA R. PALLMEYER
UNITED STATES DISTRICT COURT

VERDICT FORM B

We, the jury, find for Deon Wright and against CBS/Westinghouse and further find the following:

First: Without taking into consideration the question of reduction of damages due to the negligence of Deon Wright, we find that the total amount of damages suffered by Deon Wright as a proximate result of the occurrence in question is                    $ 175,000

      itemized as follows:

The reasonable expense of past medical and medically related expenses:   $ 150,000

The present cash value of the reasonable expenses of medical care, treatment, and services reasonably certain to be received in the future:

$ 25,000

The loss of a normal life experienced and reasonably certain to be experienced in the future:

$ 0

The pain and suffering experienced and reasonably certain to be experienced in the future as a result of the injuries:

$ 0

The emotional distress experienced and reasonably certain to be experienced in the future:

$ 0

PLAINTIFF'S TOTAL DAMAGES:   $ 175,000

Second: Assuming that 100% represents the total combined negligence of all persons whose negligence proximately contributed to Deon Wright's injury, including Deon Wright and CBS/Westinghouse, we find that the percentage of such negligence attributable to plaintiff Deon Wright is

95 %

Third: After reducing the total damages sustained by Deon Wright by the percentage of negligence attributable solely to Deon Wright, we assess Deon Wright's recoverable damages in the sum of:

$ 8,750





# EXHIBIT C

E-FILED
Friday, 24 January, 2014  03:20:45 PM
Clerk, U.S. District Court, ILCD

## VERDICT FORM A

We, the jury, find in favor of the defendant, CBS/Westinghouse, and against the plaintiffs, Larry Kinser and Donna Kinser.

s/Juror

s/Juror

s/Juror

s/Juror

s/Juror

s/Presiding Juror

Presiding Juror

s/Juror

s/Juror

s/Juror

s/Juror

s/Juror

FILED

JAN 2 3 2014

CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

34

3.     We, the jury, further find that Larry Kinser's lifetime smoking habits were/~~were not~~ a proximate cause of his present lung condition.

s/Juror                                   s/Juror

_____                   _____
s/Juror                                   s/Juror

_____                   _____
s/Juror                                   s/Juror

s/Juror                                   s/Juror

s/Juror                                   s/Juror

s/Presiding Juror                         s/Juror

Presiding Juror

4.     Considering that 100% represents the total conduct that caused the present lung condition of Larry Kinser, or stated another way, the total proximate cause of Larry Kinser's present lung condition, we, the jury, makes the following findings of causation:

| | | |
|---|---|---|
| Larry Kinser's smoking | 70 | % |
| Second hand smoke | 10 | % |
| CBS/Westinghouse | 0 | % |
| Coworkers working with asbestos at other job sites | 20 | % |

s/Juror                                   s/Juror

s/Juror                                   s/Juror

_____                   _____
s/Juror                                   s/Juror

_____                   _____
s/Juror                                   s/Juror

_____                   _____
s/Juror                                   s/Juror

s/Presiding Juror                         s/Juror

_____                   _____
Presiding Juror

40

## SPECIAL INTERROGATORIES

1.     We, the jury, find that the conduct of CBS/Westinghouse ~~was~~/was not a proximate cause of Larry Kinser's present lung condition.

s/Juror                      s/Juror

_____    _____
s/Juror                      s/Juror

_____    _____
s/Juror                      s/Juror

_____    _____
s/Juror                      s/Juror

_____    _____
s/Presiding Juror            s/Juror

_____    _____
Presiding Juror


2.     We, the jury, also find that the conduct of others working with asbestos at the job sites where Larry Kinser spent his working life was/~~was not~~ a proximate cause of his present lung condition.

s/Juror                      s/Juror

_____    _____
s/Juror                      s/Juror

_____    _____
s/Juror                      s/Juror

_____    _____
s/Juror                      s/Juror

_____    _____
s/Presiding Juror            s/Juror

_____    _____
Presiding Juror

# EXHIBIT D

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA


ROGER SEEHAFER,                    )   14-CV-00059
                                   )
          Plaintiff,               )
                                   )
                                   )
                                   )
     vs.                           )
                                   )
WEYERHAEUSER COMPANY, et al.,      )   Philadelphia, PA
                                   )   January 13, 2014
          Defendants.              )   10:27 a.m.



TRANSCRIPT OF TELEPHONIC HEARING
BEFORE THE HONORABLE DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:        MICHAEL P. CASCINO, ESQUIRE
                          CASCINO VAUGHAN LAW OFFICES LTD.
                          220 S. Ashland Avenue
                          Chicago, Illinois

For Owens-Illinois:       EDWARD CASMERE, ESQUIRE
                          BRIAN WATSON, ESQUIRE
                          SCHIFF HARDIN, LLP
                          233 South Wacker Drive
                          Suite 6600
                          Chicago, IL 60606

For Weyerhaeuser:         TANYA ELLIS, ESQUIRE
                          FORMAN PERRY WATKINS KRUTZ & TARDY
                          328 Newman Springs Road
                          Red Bank, NJ 07701

Audio Operator:

Transcribed by:           DIANA DOMAN TRANSCRIBING
                          P.O. Box 129
                          Gibbsboro, New Jersey  08026-0129
                          Office:  (856) 435-7172
                          Fax:     (856)  435-7124
                          Email:   dianadoman@comcast.net


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

1                     I N D E X

2    ARGUMENT BY:

3         Mr. Casmere                    3, 7, 9, 13

4         Mr. Cascino                       6, 8, 12

5         Ms. Ellis                             10

6    Ruling:

7      The Court                               14

Casmere - Argument                                              3

1          (The following was heard in open court at 10:27 a.m.)

2              THE COURT:  Good morning, counsel.  It's Judge

3      Strawbridge.  Mr. Casmere on for Owens-Illinois?

4              MR. CASMERE:  Yes, Your Honor.

5              THE COURT:  Mr. Watson as well?

6              MR. WATSON:  Yes, Your Honor.

7              THE COURT:  Ms. Ellis?

8              MS. ELLIS:  Good morning, Your Honor.

9              THE COURT:  Okay.  And this is Mr. Cascino's motion.

10     I assume you're on, Mike?

11             MR. CASCINO:  Yes, Your Honor.

12             THE COURT:  Okay.  And I understand we're case

13     number 14-59, as its Seehafer, is that the way he says his

14     name?

15             MR. CASMERE:  Yes, sir.

16             THE COURT:  Versus Weyerhaeuser.  Okay.  You set

17     this up as a request for an emergency hearing, which we've

18     granted your right to have the hearing.  And I have your

19     papers, I believe I understand the essence of your request.

20             And I want to hear from the defendants, from

21     Owens-Illinois and Weyerhaeuser what their position is.

22             MR. CASMERE:  Your Honor, Edward Casmere.  If Ms.

23     Ellis wants to go, I'm happy to have them be first.

24     Otherwise, I'll proceed.

25             MS. ELLIS:  You can go ahead, Ed.

1          MR. CASMERE:  Okay.  Your Honor, Owens-Illinois'

2     position is that we certainly understand and do not want to

3     get in the way of the ability to preserve Mr. Seehafer's

4     testimony, although we want to make sure that our rights are

5     protected as much as they possibly can be under the

6     circumstances.

7          And we obviously don't want, you know, this to

8     become the rule, and we understand that this is sort of an

9     exceptional circumstance.

10          We have a couple of concerns.  The first is that we

11     have a concern and an issue under 1391(c) with respect to

12     venue.  That we want to make sure that if, you know, we're

13     going to have a motion to dismiss, that would probably be

14     relevant to that.

15          But the deposition would probably have to take place

16     under this time frame before our answer would be due.  Ans so

17     we want to be able to preserve any 1391(c) objections that we

18     have and not waive those by participating in a deposition.

19     That's number one.

20          Number two is that we want to make sure that we have

21     all, you know, all the best discovery that we can get before

22     this would proceed.

23          And we want to, obviously, be able to preserve any

24     objections that we have that if the discovery we've been

25     provided in advance of the deposition is insufficient or

1    inadequate to conduct the thorough cross-examination, that we

2    have a -- preserve our rights to, you know, reopen the

3    deposition, or object to it's use.

4            If Mr. Seehafer is still alive at the time, that we

5    can actually re-take the deposition when we get to additional

6    discovery.

7            On the discovery that we have been provided, we --

8    you know, there's a couple of problems with it, and I think we

9    need a few more things before could go forward.  But I hope

10   that they could be done and provided in very short order.  The

11   interrogatory answers that we've been provided are not

12   verified.  So we would need verified interrogatories.

13           We would -- the interrogatories that have been

14   provided, some of them are incomplete, and I think there's at

15   least one instance where the interrogatory says "call client,"

16    which I suspect is a notation for plaintiff's counsel to, you

17   know, and not for us to call the client.

18           There are some references in the interrogatory

19   answers that, while Mr. Seehafer may not be in possession of

20   certain materials, his lawyers may be.  And in particular,

21   before the deposition would proceed, we would like any

22   documentary evidence of Owens-Illinois Kaylo use at

23   Weyerhaeuser.

24           If it's in possession of plaintiff's counsel, we'd

25   like that provided so we could cross-examine on that.

1          We'd like the employment file, if that's possible,

2     between either Weyerhaeuser, or Mr. Cascino's office, if they

3     have that.  Any Social Security printout or earnings printout

4     about work history, any union records, any medical records

5     that they have, and, finally, any 524(g) trust affidavits that

6     have been submitted, or that have been signed in preparation

7     to be submitted to the trust.

8          THE COURT:  All right.  Mr. Cascino, I'll hear from

9     you with respect to these.

10         MR. CASCINO:  Your Honor, I'm happy to provide -- I

11    thought we had provided verified interrogatories, because I

12    went over them with the client and got a signature from him.

13    But will be able to provide those no later than in the next

14    day or two.

15         As far as a lawyer materials, they've come over and

16    visited our office to look at the materials that we do have.

17    And they're more than happy to look at those materials.  We

18    did provide them with a work history.  He basically worked two

19    jobs.

20         THE COURT:  Wait a minute, Mr. Cascino, excuse me,

21    before you leave the question, Mr. Casmere, is this right that

22    your client, or some other related client had a chance that

23    -- well your client had a chance to go over and look at

24    materials?

25         MR. CASMERE:  We've been provided materials that

Casmere - Argument                                                    7

1   relate to these cases in this facility.  I'm asking

2   specifically for a very narrow set of documents.  And if

3   there's any documents that actually indicate that

4   Owens-Illinois Kaylo was used at that facility.  That's what I

5   want.  That's a very specific, not just the general, give us

6   all the information you have on Weyerhaeuser.

7           I want just very specifically if they have

8   documentary evidence, whether it be packing slips, invoices,

9   or those types of materials that show Owens-Illinois Kaylo

10  being used at the Weyerhaeuser facility.

11          THE COURT:  And these are - -

12          MR. CASMERE:  And that's all I'm asking for.

13          THE COURT:  And these are presumably the kind of

14  documents that you would have expected the plaintiff to

15  produce at trial, or in opposition to summary judgment that

16  would show some causation between your client's product and

17  the defendant's medical condition -- or the plaintiff's

18  medical condition?

19          MR. CASMERE:  Yes, Your Honor.  That, and, you know,

20  if we were to have time to actually, you know, to issue

21  discovery and have a normal course be put forth, then I think

22  that this is what we would ask for and we would expect to be

23  provided.  You know, but given the expedited time frame, we

24  obviously can't do that.

25          THE COURT:  All right.  Mr. Cascino, can you respond

Cascino - Argument                                               8

1  to that in terms of your organization of materials in order to

2  be able to associate any materials in particular that your

3  client may produce, or you may have otherwise obtained which

4  would be relevant to the causation question?

5          MR. CASCINO:  Your Honor, to my knowledge, we do not

6  have anything but maybe one or two small invoices pre-1959.

7  However, we did get a year ago from Mr. Riley the fact that

8  they were licensing the process patent for how to make this to

9  Weyerhaeuser, and that was information that was provided to us

10 by Owens-Illinois.

11         And that would obviously be very relevant, because

12 we think they were doing this at least until 1966.

13         THE COURT:  All right.  Well my concern is not at

14 this point so much the issue of the merits of causation, but

15 rather the question of documents in discovery as would relate

16 -- as would relate to their ability to be able to be more

17 effective as opposed to being less effective, or complete

18 anyway in the deposition.

19         MR. CASCINO:  We have no documents.  And if we do,

20 there may be one or two invoices I saw, but I don't even

21 believe, my legal assistant's saying no, shaking his head no

22 is that there are none.

23         So the only thing we have are, again, is what Riley

24 provided us, which was an affidavit by him saying that they

25 did have a process patent.

Casmere - Argument                                        9

1            THE COURT:  Okay.  Well we will take that then as

2    your representation with respect to having searched the

3    materials, and you're telling me then you see nothing that

4    shows any specific kind of connection, other than what you

5    said with respect to information you have for Mr. Riley that I

6    presume Mr. Casmere is aware of.

7            MR. CASCINO:  Yes, Your Honor.  That's true.

8            THE COURT:  All right.  So -- but if there's

9    anything that you have in mind that you think may have

10   related, you need to make sure that gets to Mr. Casmere and

11   Ms.  Ellis, straight away.  All right.

12           MR. CASMERE:  I -- Your Honor --

13           THE COURT:  Go ahead, Mr. Casmere, what else?

14           MR. CASMERE:  Well the next thing on my list, Your

15   Honor, was the employment file.

16           THE COURT:  Yes.

17           MR. CASMERE:  And I'm not sure if Mr. Cascino would

18   have that, or maybe that's more of a request for Weyerhaeuser,

19   but I would hope that that will be something that we could get

20   provided in an expedited fashion.

21           THE COURT:  All right.  Do you have anything on

22   that, Mr. Cascino?

23           MR. CASCINO:  No.  I just have my client telling me

24   that he worked there and I have his -- I may have a few of his

25   work, you know, the IRS statements.  But that is information

Ms. Ellis - Argument                              10

1   that Weyerhaeuser does have.

2            THE COURT:  All right.  Ms. Ellis, can you help us

3   out with that?

4            MS. ELLIS:  Yes, Your Honor.  I do not know if

5   Weyerhaeuser has the file or not.  It's possible that they do.

6   I can certainly request the file.  We typically require an

7   authorization from the plaintiff.  So if Mr. Seehafer can sign

8   an authorization for the release of the records to the other

9   parties, then I'll be happy to get whatever they have and

10  produce those.

11           THE COURT:  All right.  Well the question is, these

12  need to be expedited.  Let me just ask this.  Had there

13  previously been -- before the litigation was filed, I assume

14  that Mr. Seehafer, through counsel, or otherwise, made some

15  kind of a claim against Weyerhaeuser, or would that be

16  incorrect?

17           MR. CASCINO:  That is correct, Your Honor.

18  Weyerhaeuser and the Court has ruled in our favor, the local

19  court up there, basically was dumping the asbestos all over

20  the town.  And people that -- and actually they were measuring

21  the levels of asbestos, even as far as a half a mile to a mile

22  from the plant, and they exceeded the then TLV.

23           THE COURT:  But my question is different.  My

24  question is whether or not Weyerhaeuser would have had a

25  specific indication of an intention on the part of Mr.

1   Seehafer to bring a claim.

2           Did he ever provide notice to them that he intended

3   to bring a claim?  Or did he bring a claim previously before

4   the litigation?

5           MR. CASCINO:  No, he -- all we did was this Rule 27

6   Petition, which we were denied.

7           THE COURT:  All right.  So Ms. Ellis --

8           MS. ELLIS:  Your Honor, if I may just just a quick

9   question?  Are you referring to something like a workers' comp

10  claim, or something like that?

11          THE COURT:  Any claim at all that would've put

12  Weyerhaeuser on notice that Mr. --

13          MS. ELLIS:  The first indication I had of Mr.

14  Seehafer's claim was the Rule 27 Petition that we receive

15  sometime in mid-December.

16          THE COURT:  All right.

17          MS. ELLIS:  Early to mid-December.

18          THE COURT:  All right.  Well I'm not - - I

19  understood from Mr. Cascino's papers that there apparently was

20  some reference to a date of January 15th, which I think is

21  Wednesday, as a suggested deposition date.  Is that -- have

22  you guys talked subject to ruling here as to going forward on

23  that particular date?

24          MS. ELLIS:  No, we have not, Your Honor.  But Mr.

25  Cascino has noticed Mr. Seehafer's deposition as a coworker or

Cascino - Argument                                    12

1   fact witness in a handful of the other cases.  And that

2   deposition is set for January 22nd.

3            MR. CASCINO:  And, Your Honor, we're happy going

4   ahead -- this is Mike Cascino -- we're happy going ahead on

5   the twenty-second.   I can provide verified interrogatory

6   answers, his work history is again two places that he worked

7   at.  And Weyerhaeuser would have those documents.

8            He filed and he signed no 524(g).  I don't see any

9   reason to do any of those in his case at all.

10           And he -- I provided a medical affidavit from his

11   doctor saying we need to do his dep sooner than later.

12           THE COURT:  Okay.

13           MR. CASCINO:  He almost died on us on December 30.

14           THE COURT:  All right.  So I'm going to direct

15   Weyerhaeuser to produce -- to conduct an expedited search with

16   respect to the employment file.  And have that employment file

17   produced to Owens-Illinois, and to plaintiff's, of course, you

18   know, anybody else who's involved in the suit, on or before

19   Monday, the 20th of January, one week's time.

20           And I would expect that you would immediately begin,

21   Ms. Ellis, to contact the appropriate people for an expedited

22   search.  And in the meantime, Mr. Cascino will do what he

23   needs to do to get the appropriate authorization to

24   Weyerhaeuser.

25           I'm taking your comment with respect to the 524(g)'s

1   to be an indication, a representation on your part on behalf

2   of your client that no such affidavits were signed or unsigned

3   -- sorry, verified or verified, have been prepared or

4   presented.  Is that, that's what I'm understanding you to say,

5   and I think on that basis, Mr. Casmere can rely upon it.

6              Is that what you mean to say, Mr. Cascino?

7              MR. CASCINO:  That is correct.

8              THE COURT:  Okay.  All right.  What about Social

9   Security?

10             MR. CASCINO:  We do not have those records.  But he

11  does have a few income tax returns.  I don't know how far they

12  go back.

13             THE COURT:  Okay.

14             MR. CASCINO:  I will have, and I can get that done

15  by Thursday.

16             THE COURT:  Okay.  Mr. Casmere, anything else on

17  that?  I mean, I would presume authorizations for Social

18  Security takes weeks, and weeks, and weeks, if not months and

19  months, is that right?

20             MR. CASMERE:  I think that's true, Your Honor.  And

21  I think, you know, we'll take whatever we can get in this time

22  frame.  I think there is some claim of a lost wage claim here,

23  so those records that Mr. Cascino says that he has would

24  probably be at least helpful and relevant to that.

25             THE COURT:  All right.

Ruling                                          14

1          MR. CASMERE:  But will take what we can get on that

2    from them.

3          THE COURT:  And I'll also direct him to provide

4    whatever kind of authorization you need or would be required

5    in order to secure the Social Security records, even

6    understanding that they might not be available until -- you

7    might not -- he might not still be living at the time they are

8    produced.  But presumably the case through his estate would go

9    on, so I will direct that that be -- that be done immediately.

10         In other words, before Monday the 20th, that Mr.

11   Seehafer -- that Mr. Seehafer provide the appropriate

12   authorizations to Mr. Cascino for that purpose.

13         And then for you guys proceed with respect to Social

14   Security.  So with those indications and representations, and

15   we do have court reporter here, so it's on the record.  I will

16   grant the motion and would direct that the deposition would go

17   forward on January 22, which I understand is the day that Mr.

18   Seehafer's already scheduled for apparently testimony in some

19   other cases.

20         MR. CASCINO:  Your Honor, I would just ask one

21   thing.  That the employment records that Weyerhaeuser provides

22   will include his medical surveillance records.  They did a

23   surveillance where they were doing x-rays on the clients, a

24   lot of people that worked in the plant on a yearly basis until

25   around 1990.

Colloquy                                    15

1          And then I'd ask that the medical records medical

2     surveillance records be provided, as well as the other

3     employment.

4          THE COURT:  All right.  That sounds to me -- well,

5     Ms. Ellis, any responses to that?

6          MS. ELLIS:  No.  We'll produce what we have.  I just

7     want everyone's expectations to be managed, though, that we

8     sometimes have employment files, and we sometimes do not.  So

9     if we have a file for Mr. Seehafer, will produce it, including

10    any surveillance records.

11         THE COURT:  All right.  But what I'm going to ask

12    you to do, even further, Ms. Ellis, is that to the -- if

13    you're not able to produce it, you need to provide an

14    affidavit from an appropriate authorized representative of

15    Weyerhaeuser to the efforts that were made to attempt to

16    search for the material.  And how it would be that you've

17    reached the conclusion that you do not have such files.

18         Both with respect to the employment and also with

19    respect to this medical surveillance that Mr. Cascino's been

20    referring to.

21         MS. ELLIS:  Yes, Your Honor.

22         THE COURT:  You'll have a week to -- you have a week

23    to get that presented to Mr. Cascino.

24         MS. ELLIS:  Okay.

25         THE COURT:  All right, folks, anything else on this?

1          MS. ELLIS:  I just, Your Honor, to reiterate what

2     Mr. Casmere said about being sure that our appearance and

3     attendance at the deposition does not waive any of our

4     defenses, or objections.  In particular the venue objection is

5     very important, because like he said, are answer will not even

6     be due until after this deposition goes forward.

7          THE COURT:  Yes.  I understand that.  I guess as a

8     venue issue, I appreciate your desire not to have that issue

9     waived.  And I would determine that, as far as I'm concerned

10    under the circumstances of this, it is not -- it's not

11    necessarily waived.  You would still have a right to raise it.

12         Mr. Cascino, I assume you have no objection to that?

13         MR. CASCINO:  That is correct, Your Honor.

14         THE COURT:  Okay.  Now I do under -- but I'm

15    implicit in all that is that this is not a jurisdictional type

16    question, which I don't know if we can do any, you know,

17    waivers on it will make any difference, but as a venue

18    question I think that we can, and certainly under the

19    circumstances, given the circumstances, and given what I

20    presume would be the likelihood, if not the certainty, that

21    this case is being filed in the appropriate Federal Court in

22    Wisconsin or Illinois, it would be, you know, relatively

23    properly removed to this Court as part of the MDL.

24         Which and I understand on that basis and given the

25    need for expedited action, Mr. Cascino took the position that

1    he did.

2              Is that sufficient for your purposes, Ms. Ellis?

3              MS. ELLIS:  Yes, Your Honor.  Thank you.

4              THE COURT:  Okay, folks.  Thank you very much.

5         (Proceedings concluded at 10:45 a.m.)

6                   C E R T I F I C A T I O N

7    I, Josette Jones, court approved transcriber, certify that the

8    foregoing is a correct transcript from the official digital

9    audio recording of the proceedings in the above-entitled

10   matter.

11

12   --------------------------------          -----------------

13   JOSETTE JONES                             DATE

14   DIANA DOMAN TRANSCRIBING