**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| MILTON BOYER and , ) | |
| KATHY BOYER, ) | |
| ) | No. 3:14-cv-286 |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| WEYERHAEUSER COMPANY, et al. ) | |
| ) | |
| Defendants. ) | |

RESPONSE TO OWENS-ILLINOIS, INC.'S MOTION TO DISMISS

Plaintiffs opposes Owens-Illinois, Inc.'s ("O-I") Motion to dismiss.

### **Legal Standard**

The purpose of a motion to dismiss is to test the sufficiency of complaints, not to rule on a complaint's merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).

In analyzing O-I's motion to dismiss, the court must accept all well-pled allegations as true, and view those allegations in the light most favorable to plaintiffs, drawing all reasonable inferences in plaintiffs' favor. *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 758 (7th Cir. 2006). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ... a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do ... Factual allegations must raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-65, 167 L.Ed. 2d 929 (2007) (Internal citations omitted). The pleadings comply with these standards.

1

**Argument**

Plaintiffs have pled two bases for relief: (1) O-I "designed and sold licenses for a patent to manufacture fire doors incorporating asbestos-containing cores," and (2) "O-I also manufactured, sold, and designed asbestos products, including without limitation fire door cores." (Ex. 1 at ¶6. See also ¶24, ¶25, and ¶35.) O-I's motion only discusses the patent and does not address the allegations that O-I was the manufacturer of asbestos containing cores. O-I incorrectly contends "There is no allegation that Weyerhaeuser ever used Owens-Illinois Kaylo door cores." (O-I's Brief at 1.) Absent any argument as to the sufficiency of the pleadings about O-I as a manufacturer of Kaylo door cores, the allegations cannot be dismissed under Rule 12.

*1. O-I's Analysis of Patent Law*

As to the patent allegations, O-I discusses patent law without relating the discussion to the relevant standards of Wisconsin negligence and strict products liability law. Plaintiffs have not pled a case of patent infringement or challenged the validity of claims made by O-I in obtaining the O-I door core manufacturing process patent. Rather, plaintiffs pled that negligence occurred when O-I sold a license to use a dangerous manufacturing process, was paid for each door sold using this process, and plaintiffs were foreseeably injured.

Like anyone else, under Wisconsin law patent holders are liable to those injured by their negligent conduct. For example, in *Dolin v. SmithKline Beecham Corp.,* 2014 U.S. Dist.LEXIS 26219 (N.D. Ill., 2014)*,* a court held that a brand manufacturer can be liable after its patent has expired to those injured by generic drugs following the patent's design. The court said, "the foreseeability of Plaintiff's injury as a result of such negligence should not be controversial.*"Id.* at 16.

*2. WI Negligence: Plaintiff's Injury was Foreseeable*

Plaintiffs have pled the following:

1. O-I "designed and sold licenses for a patent to manufacture fire doors incorporating asbestos-containing cores," (Ex. 1 at ¶6.)

2. "It was reasonably foreseeable to O-I that plaintiff and other workers working in or in proximity to Kaylo fire door manufacturing operations at Weyerhaeuser would inhale asbestos fibers released during the operations," (Ex. 1 at ¶27.)

3. O-I "breached its duty of care and was negligent" by failing to warn and to "instruct plaintiff, his employers, patent licensees, or others in the use of precautionary measures relating to airborne asbestos fibers released during production of Kaylo fire doors," (Ex. 1 at ¶31.)

4. "As a direct and proximate result of the acts and omissions of defendant above, the plaintiff was injured(.)" (Ex. 1 at ¶32.)

Taken together, these pleadings comprise a valid claim for relief under Wisconsin negligence law, as the pleadings include allegations of duty (defined in Wisconsin by foreseeability), breach of duty, causation, and injury.

Plaintiffs do not dispute the need to allege the existence of a duty under Wisconsin law. The existence of a duty is determined in Wisconsin by foreseeability: "A defendant's duty is established when it can be said that it was foreseeable that his act or omission to act may cause harm to someone. A party is negligent when he commits an act when some harm to someone is foreseeable." *Rolph v. EBI Cos.*, 159 Wis. 2d 518, 532, 464 N.W.2d 667 (1991) (quoting *Schuster v. Altenberg*, 144 Wis. 2d 223, 235, 424 N.W.2d 159 (1988)). *See Schilling v. Stockel*, 26 Wis. 2d 525, 532, 133 N.W.2d 335 (1965) ("[T]he law is that if the act is one which the party ought, in the exercise of ordinary care, to have anticipated was liable to result in injury to others,

3

then he is liable for any injury proximately resulting from it, although he could not have anticipated the particular injury which did happen.") (quoting *Klassa v. Milwaukee Gas Light Co.*, 273 Wis. 176, 182, 77 N.W.2d 397 (1956)).

Under Wisconsin negligence law, the liability of a defendant is "not examined in terms of whether there is a duty to do a specific act." *Hornback v. Archdioceses of Milwaukee*, 2008 WI 98, ¶24, 313 Wis. 2d 294, 310, 752 N.W.2d 862 (2008) (quoting *Nichols v. Progressive Northern Ins. Co.,* 2008 WI 20, ¶45, 308 Wis. 2d 17, 746 N.W.2d 220 (2008)). Wisconsin courts follow the famous minority opinion of Judge Andrews in *Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 162 N.E. 99, 103 (N.Y. 1928), holding that "[everyone] owes to the world at large the duty of refraining from those acts that may unreasonably threaten the safety of others." *Hornback*, 2008 WI 98, ¶22 (quoting *Palsgraf,* followed). *Followed in Behrendt v. W.D.M. Enterprises of Marinette*, *WI, Co.*, 2009 WI 71, ¶17 . Under this framework, a person is negligent "if the person, without intending to do harm does something (or fails to do something) that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property." *Id.* (quoting *Alvarado v. Sersch*, 2003 WI 55, ¶14, 262 Wis. 2d 74, 662 N.W.2d 350 (2003)).

For example in *A. E . Investment* the Wisconsin Supreme Court held an architect could be found liable for not taking into account the condition of subsoil in design of a building. 62 Wis. 2d at 485-87. The building floor became uneven and the premises became untenable. The building owner sued for lost income and the defendant architect demurred claiming no duty existed. The trial court overruled the demurrer and the Wisconsin Supreme Court affirmed, stating:

> A defendant's duty is established when it can be said that it was foreseeable that his act or omission to act may cause harm to someone. A party is negligent when he commits an act when some harm to someone is foreseeable. Once negligence is established, the defendant is liable for unforeseeable consequences as well as foreseeable ones. In addition, he is liable to unforeseeable plaintiffs.
>
> . . .
>
> The consistent analyses of this court reveal that the question of duty is not an element of the court's policy determination. It is, rather, an ingredient in the determination of negligence. We stated in *Schilling v. Stockel*, supra, 26 Wis.2d page 531, 133 N.W.2d page 338, ". . . once an act has been found to be negligent, we no longer look to see if there was a duty to the one who was in fact injured." In *Cirillo v. Milwaukee* (1967), 34 Wis.2d 705, 711, 150 N.W.2d 460, 463, we said: "This court has often stated that 'harm must be reasonably foreseen as probable by a person of ordinary prudence under the circumstances, if conduct resulting in such harm is to constitute negligence." There is no necessity, however, that the actual harm that resulted from the conduct be foreseen.

*A. E. Investment Corp. v. Link Builders, Inc.*, 62 Wis. 2d 479, 485 (1974).

The question at the pleading stage is whether O-I's conduct as alleged as a matter of law makes the injury unforeseeable. Accepting as true the allegations of the complaint, O-I had notice of the dangers of asbestos as an ingredient, obtained the patent, licensed the patent, and collected royalties for each door manufactured under the patent.

The O-I fire door patent stated "asbestos fibers" were "preferably" to be used in individual strips which were tongued and grooved to fit together as the core of the composite fire door. In the exercise of ordinary prudence, a patent licensor ought to know this construction process involved extensive cutting to create the tongue and groove pieces, would release dust containing

asbestos, and foreseeably result in injury. The pertinent language in Patent No. 2,593,050 is as follows:

> The core or body of the panel consists of a light-weight, fire-proof material, <u>preferably hydrous calcium silicate with a spiculated asbestos fiber binder</u>. Such a material is now on the market under the trade name Kaylo. [Underscoring added.]
> ...Said core consisting of a plurality fo articulated sections in the form of individual strips extending across said core and joined edge-to-edge, the adjoining edge surfaces thereof being formed with interlocking tongues and grooves fitted together...

(Ex. 2 at 2, 3.) Since O-I itself was in the business of making the asbestos containing Kaylo cores, the foreseeability to O-I is virtually undeniable.

Regardless of whether O-I's patent required the use of asbestos,[1] it was foreseeable to O-I that asbestos would sometimes be used as part of the patented process. As licensors of a patent known to potentially use asbestos, O-I breached its duty by failing to warn or "instruct plaintiff, his employers, patent licensees, or others in the use of precautionary measures relating to airborne asbestos fibers(.)" (Ex. 1 at ¶31.) These actions could have prevented the harm that was foreseeably caused by the use of O-I's patent. Since asbestos was used at the Marshfield door plant as an ingredient of the cores, the duty to protect by those actions exists. O-I's argument that no duty exists because a patent licensee need not use asbestos is irrelevant in a situation where asbestos was foreseeably and actually used.

Since asbestos is a dangerous disease-causing toxin and since this fact was well known by the 1940's, a person who in the 1950's prescribes the use of asbestos in a product it is licensing ought to know, in the exercise of ordinary prudence, that such conduct might result in injury to

---

[1] Which, reading the facts in the light most favorable to plaintiffs, it did.

others. That is all that needs to be shown to go to a jury. *See Klassa*, 273 Wis. at 182; *Schilling*, 26 Wis. 2d at 532; *Schuster*, 144 Wis. 2d at 235; *Rolph*, 159 Wis. 2d at 532; *Nichols*, 2008 WI 20, ¶45; *Hornback*, 2008 WI 98, ¶24.

Wisconsin courts have routinely held that even in "hard" or "unusual cases," defined as those "in which the injury suffered is a remote or unusual result of the act claimed to be negligent," the question of foreseeability should be submitted to the jury:

> It would seem to be preferable to submit these hard cases to the jury in so far as determining the issues of negligence and causation in the same manner as in the ordinary case. If the jury does determine that there was negligence, and that such negligence was a substantial factor in producing the injury, it is then for the court to decide as a matter of law whether or not considerations of public policy require that there be no liability.

*Pfeifer v. Standard Gateway Theater*, 262 Wis. 229, 240 (1952) (citing *Osborne v. Montgomery*, 203 Wis. 223 [1931].)

In special circumstances, Wisconsin courts may determine after a jury trial that no liability should be imposed even though a negligent act was committed. In Wisconsin, the courts normally defer taking up the issue of whether public policy justifies a nonliability finding by the court until a full factual record has been developed and a jury has been allowed to make a negligence determination. *See Thomas ex rel. Gramling v. Mallett*, 2005 WI 129, ¶166, 285 Wis. 2d 236, 323 & n.54, 701 N.W.2d 523, 565 (2005) (noting that "as with the constitutional arguments, [this court] expresses no opinion on the dissent's analysis, except to acknowledge that this court retains the ability to limit liability based on public policy factors but rarely invokes this power before a finding of negligence has occurred."). As the court stated in *Alvarado*, 2003 WI

55, ¶18: "In most cases, the better practice is to submit the case to the jury before determining whether the public policy considerations preclude liability. Only in those cases where the facts are simple to ascertain and the public policy questions have been fully presented may a court review public policy and preclude liability before trial." This negligence case should be submitted to a jury to decide.

Nonliability is a question of public policy and does not speak to the presence or absence of duty. The Supreme Court observed in *Schilling*, 26 Wis. 2d at 532, "our decisions since 1952 direct that nonliability be based on considerations of public policy rather than couched in terms of an absence of duty." At this stage, plaintiffs have sufficiently pled that O-I owed a duty by pleading the foreseeability of plaintiffs' injuries.

Moreover, nonliability findings are rare, restricted to cases where the imposition of liability would "shock the conscience of society." *See Schilling*, 26 Wis. 2d at 533 (". . . in cases so extreme that it would shock the conscience of society to impose liability, the courts may step in and hold as a matter of law that there is no liability.") (quoting *Pfeifer v. Standard Gateway Theater, Inc.*, 262 Wis. 229, 238, 55 N.W.2d 19 (1952)); *and see Rolph v. EBI Cos.*, 159 Wis. 2d at 534 ("The essential rationale for limiting liability on the grounds of public policy is that the imposition of liability "would shock the conscience of society.") (quoting *Schilling*).[2]

---

[2] The Wisconsin courts have stated the following public policy facts are helpful in determining whether to so limit liability: "(1) The injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tort-feasor; or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; or (4) because allowance of recovery would place too unreasonable a burden on the negligent tort-feasor; or (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance of recovery would enter a field that has no sensible or just stopping point." *Rolph v. EBI Cos.*, 159 Wis. 2d at 534 (quoting *Coffey v. Milwaukee*, 74 Wis. 2d 526, 541, 247 N.W.2d 132 (1976)).

The sole case O-I cites as precedent for dismissing plaintiff's negligence claim, *Geboy,* was a federal court determination based on public policy after the facts had been fully developed. The facts are distinguishable from those alleged in plaintiffs' pleadings. The ruling in *Geboy* was based on the trial court's determination that the defendants "acted solely as a broker in the sale," and the defendants "did not have an affirmative duty to warn subsequent owners of any dangerous conditions of which they had no notice." *Geboy v. TRL Inc.*, 159 F.3d 993 at 997 (7th Cir. 1998). The 7th Circuit stated:

> (B)oth of these defendants had minimal contact with the vertical boring mill; neither company had any occasion to foresee an unreasonable risk of harm in that neither Chalmers and Kubeck nor Industrial Plant Services had the opportunity (or affirmative duty for that matter) to view the rotating drive shaft of the vertical boring mill in operation and to discover a potential risk of harm. To expose every business that comes into contact with a product to potential liability "would shock the conscience of society because it would have no sensible or just stopping point." *Rolph*, 464 N.W.2d at 673.

*Id.* at 1000.

Here, O-I had notice of the dangers of their patent and chose to both license and collect royalties on use of the patent. Imposing liability on these facts cannot be said to "shock the conscience of society." To the contrary, imposing liability on a patent licensor that explicitly recommends and profits off the use of a dangerous toxin accords with society's sense of what is just.

3. *WI Strict Liability:*

Plaintiffs have pled the following:

5. "Defendant was in the business of selling Kaylo fire doors (including both patent

rights and manufactured cores)," (Ex. 1 at ¶35.);

6. "The Kaylo patent process was sold with the expectation by O-I that the process would be without substantial change and the production of doors pursuant to the process would release asbestos fibers in the air," (Ex. 1 at ¶37)

7. A sale of the patented process occurred in which O-I was paid "for each Kaylo fire door produced," (Ex. 1 at ¶26)

8. O-I failed to investigate, test, warn, or "instruct Plaintiff, his employers, patent licensees, or others in the use of precautionary measures relating to airborne asbestos released during production of Kaylo fire doors;" (Ex. 1 at ¶39) and

9. As a result of the defective process sold by O-I, which used asbestos in the manufacture of the Kaylo fire doors, plaintiff was injured.  (Ex. 1 at ¶40.)

Taken together, these pleadings comprise a valid claim for relief under Wisconsin law. The Restatement (Second) of Torts, sec. 402A, adopted by the Wisconsin Supreme Court in *Dippel v. Sciano*, 37 Wis.2d 443 (1967), states:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

O-I was in the business of selling both the patent, which provided the manufacturing process by which the doors were made, and Kaylo door cores.  O-I had an interest in the sale of the doors made by Weyerhaeuser pursuant to the royalty payment when a door was sold.  As a

result of the defective and unreasonably dangerous condition of the patent manufacturing process, doors were manufactured causing the exposures to asbestos.   O-I was later part of the sale of these products pursuant to the royalty paid for each door sold.   The products liability claim should proceed as pled under Wisconsin law.

## Conclusion

For the above reasons, plaintiff asks the court to deny Owens-Illinois Inc.'s Motion to Dismiss.


Dated:   June 9, 2014

s/ Robert G. McCoy
Attorney for Plaintiff

Robert G. McCoy
James N. Hoey
Cascino Vaughan Law Offices, Ltd.
220 South Ashland Avenue
Chicago, Illinois 60607
(312) 944-0600
(312) 944-1870 (fax)
ecf.cvlo@gmail.com