# EXHIBIT D

```
                    UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF PENNSYLVANIA


ROGER SEEHAFER,                    )   14-CV-00059
                                   )
        Plaintiff,                 )
                                   )
                                   )
                                   )
    vs.                            )
                                   )
WEYERHAEUSER COMPANY, et al.,      )   Philadelphia, PA
                                   )   January 13, 2014
          Defendants.              )   10:27 a.m.



                   TRANSCRIPT OF TELEPHONIC HEARING
               BEFORE THE HONORABLE DAVID R. STRAWBRIDGE
                    UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:        MICHAEL P. CASCINO, ESQUIRE
                          CASCINO VAUGHAN LAW OFFICES LTD.
                          220 S. Ashland Avenue
                          Chicago, Illinois

For Owens-Illinois:       EDWARD CASMERE, ESQUIRE
                          BRIAN WATSON, ESQUIRE
                          SCHIFF HARDIN, LLP
                          233 South Wacker Drive
                          Suite 6600
                          Chicago, IL 60606

For Weyerhaeuser:         TANYA ELLIS, ESQUIRE
                          FORMAN PERRY WATKINS KRUTZ & TARDY
                          328 Newman Springs Road
                          Red Bank, NJ 07701

Audio Operator:

Transcribed by:           DIANA DOMAN TRANSCRIBING
                          P.O. Box 129
                          Gibbsboro, New Jersey  08026-0129
                          Office:  (856) 435-7172
                          Fax:     (856)  435-7124
                          Email:   dianadoman@comcast.net



Proceedings recorded by electronic sound recording, transcript
produced by transcription service.
```

1                             I N D E X

2    ARGUMENT BY:

3         Mr. Casmere                          3, 7, 9, 13

4         Mr. Cascino                             6, 8, 12

5         Ms. Ellis                                    10

6    Ruling:

7       The Court                                     14

1      (The following was heard in open court at 10:27 a.m.)
2           THE COURT: Good morning, counsel. It's Judge
3  Strawbridge. Mr. Casmere on for Owens-Illinois?
4           MR. CASMERE: Yes, Your Honor.
5           THE COURT: Mr. Watson as well?
6           MR. WATSON: Yes, Your Honor.
7           THE COURT: Ms. Ellis?
8           MS. ELLIS: Good morning, Your Honor.
9           THE COURT: Okay. And this is Mr. Cascino's motion.
10 I assume you're on, Mike?
11          MR. CASCINO: Yes, Your Honor.
12          THE COURT: Okay. And I understand we're case
13 number 14-59, as its Seehafer, is that the way he says his
14 name?
15          MR. CASMERE: Yes, sir.
16          THE COURT: Versus Weyerhaeuser. Okay. You set
17 this up as a request for an emergency hearing, which we've
18 granted your right to have the hearing. And I have your
19 papers, I believe I understand the essence of your request.
20          And I want to hear from the defendants, from
21 Owens-Illinois and Weyerhaeuser what their position is.
22          MR. CASMERE: Your Honor, Edward Casmere. If Ms.
23 Ellis wants to go, I'm happy to have them be first.
24 Otherwise, I'll proceed.
25          MS. ELLIS: You can go ahead, Ed.

1          MR. CASMERE:  Okay.  Your Honor, Owens-Illinois'
2     position is that we certainly understand and do not want to
3     get in the way of the ability to preserve Mr. Seehafer's
4     testimony, although we want to make sure that our rights are
5     protected as much as they possibly can be under the
6     circumstances.
7          And we obviously don't want, you know, this to
8     become the rule, and we understand that this is sort of an
9     exceptional circumstance.
10          We have a couple of concerns.  The first is that we
11     have a concern and an issue under 1391(c) with respect to
12     venue.  That we want to make sure that if, you know, we're
13     going to have a motion to dismiss, that would probably be
14     relevant to that.
15          But the deposition would probably have to take place
16     under this time frame before our answer would be due.  Ans so
17     we want to be able to preserve any 1391(c) objections that we
18     have and not waive those by participating in a deposition.
19     That's number one.
20          Number two is that we want to make sure that we have
21     all, you know, all the best discovery that we can get before
22     this would proceed.
23          And we want to, obviously, be able to preserve any
24     objections that we have that if the discovery we've been
25     provided in advance of the deposition is insufficient or

1  inadequate to conduct the thorough cross-examination, that we
2  have a -- preserve our rights to, you know, reopen the
3  deposition, or object to it's use.
4           If Mr. Seehafer is still alive at the time, that we
5  can actually re-take the deposition when we get to additional
6  discovery.
7           On the discovery that we have been provided, we --
8  you know, there's a couple of problems with it, and I think we
9  need a few more things before could go forward.  But I hope
10 that they could be done and provided in very short order.  The
11 interrogatory answers that we've been provided are not
12 verified.  So we would need verified interrogatories.
13          We would -- the interrogatories that have been
14 provided, some of them are incomplete, and I think there's at
15 least one instance where the interrogatory says "call client,"
16  which I suspect is a notation for plaintiff's counsel to, you
17 know, and not for us to call the client.
18          There are some references in the interrogatory
19 answers that, while Mr. Seehafer may not be in possession of
20 certain materials, his lawyers may be.  And in particular,
21 before the deposition would proceed, we would like any
22 documentary evidence of Owens-Illinois Kaylo use at
23 Weyerhaeuser.
24          If it's in possession of plaintiff's counsel, we'd
25 like that provided so we could cross-examine on that.

1          We'd like the employment file, if that's possible,
2  between either Weyerhaeuser, or Mr. Cascino's office, if they
3  have that. Any Social Security printout or earnings printout
4  about work history, any union records, any medical records
5  that they have, and, finally, any 524(g) trust affidavits that
6  have been submitted, or that have been signed in preparation
7  to be submitted to the trust.
8          THE COURT: All right. Mr. Cascino, I'll hear from
9  you with respect to these.
10         MR. CASCINO: Your Honor, I'm happy to provide -- I
11 thought we had provided verified interrogatories, because I
12 went over them with the client and got a signature from him.
13 But will be able to provide those no later than in the next
14 day or two.
15         As far as a lawyer materials, they've come over and
16 visited our office to look at the materials that we do have.
17 And they're more than happy to look at those materials. We
18 did provide them with a work history. He basically worked two
19 jobs.
20         THE COURT: Wait a minute, Mr. Cascino, excuse me,
21 before you leave the question, Mr. Casmere, is this right that
22 your client, or some other related client had a chance that
23 -- well your client had a chance to go over and look at
24 materials?
25         MR. CASMERE: We've been provided materials that

1  relate to these cases in this facility.  I'm asking
2  specifically for a very narrow set of documents.  And if
3  there's any documents that actually indicate that
4  Owens-Illinois Kaylo was used at that facility.  That's what I
5  want.  That's a very specific, not just the general, give us
6  all the information you have on Weyerhaeuser.
7        I want just very specifically if they have
8  documentary evidence, whether it be packing slips, invoices,
9  or those types of materials that show Owens-Illinois Kaylo
10 being used at the Weyerhaeuser facility.
11       THE COURT:  And these are - -
12       MR. CASMERE:  And that's all I'm asking for.
13       THE COURT:  And these are presumably the kind of
14 documents that you would have expected the plaintiff to
15 produce at trial, or in opposition to summary judgment that
16 would show some causation between your client's product and
17 the defendant's medical condition -- or the plaintiff's
18 medical condition?
19       MR. CASMERE:  Yes, Your Honor.  That, and, you know,
20 if we were to have time to actually, you know, to issue
21 discovery and have a normal course be put forth, then I think
22 that this is what we would ask for and we would expect to be
23 provided.  You know, but given the expedited time frame, we
24 obviously can't do that.
25       THE COURT:  All right.  Mr. Cascino, can you respond

1  to that in terms of your organization of materials in order to
2  be able to associate any materials in particular that your
3  client may produce, or you may have otherwise obtained which
4  would be relevant to the causation question?
5           MR. CASCINO:  Your Honor, to my knowledge, we do not
6  have anything but maybe one or two small invoices pre-1959.
7  However, we did get a year ago from Mr. Riley the fact that
8  they were licensing the process patent for how to make this to
9  Weyerhaeuser, and that was information that was provided to us
10 by Owens-Illinois.
11          And that would obviously be very relevant, because
12 we think they were doing this at least until 1966.
13          THE COURT:  All right.  Well my concern is not at
14 this point so much the issue of the merits of causation, but
15 rather the question of documents in discovery as would relate
16 -- as would relate to their ability to be able to be more
17 effective as opposed to being less effective, or complete
18 anyway in the deposition.
19          MR. CASCINO:  We have no documents.  And if we do,
20 there may be one or two invoices I saw, but I don't even
21 believe, my legal assistant's saying no, shaking his head no
22 is that there are none.
23          So the only thing we have are, again, is what Riley
24 provided us, which was an affidavit by him saying that they
25 did have a process patent.

1           THE COURT:  Okay.  Well we will take that then as
2   your representation with respect to having searched the
3   materials, and you're telling me then you see nothing that
4   shows any specific kind of connection, other than what you
5   said with respect to information you have for Mr. Riley that I
6   presume Mr. Casmere is aware of.
7           MR. CASCINO:  Yes, Your Honor.  That's true.
8           THE COURT:  All right.  So -- but if there's
9   anything that you have in mind that you think may have
10  related, you need to make sure that gets to Mr. Casmere and
11  Ms.  Ellis, straight away.  All right.
12          MR. CASMERE:  I -- Your Honor --
13          THE COURT:  Go ahead, Mr. Casmere, what else?
14          MR. CASMERE:  Well the next thing on my list, Your
15  Honor, was the employment file.
16          THE COURT:  Yes.
17          MR. CASMERE:  And I'm not sure if Mr. Cascino would
18  have that, or maybe that's more of a request for Weyerhaeuser,
19  but I would hope that that will be something that we could get
20  provided in an expedited fashion.
21          THE COURT:  All right.  Do you have anything on
22  that, Mr. Cascino?
23          MR. CASCINO:  No.  I just have my client telling me
24  that he worked there and I have his -- I may have a few of his
25  work, you know, the IRS statements.  But that is information

1    that Weyerhaeuser does have.
2            THE COURT: All right. Ms. Ellis, can you help us
3    out with that?
4            MS. ELLIS: Yes, Your Honor. I do not know if
5    Weyerhaeuser has the file or not. It's possible that they do.
6    I can certainly request the file. We typically require an
7    authorization from the plaintiff. So if Mr. Seehafer can sign
8    an authorization for the release of the records to the other
9    parties, then I'll be happy to get whatever they have and
10   produce those.
11           THE COURT: All right. Well the question is, these
12   need to be expedited. Let me just ask this. Had there
13   previously been -- before the litigation was filed, I assume
14   that Mr. Seehafer, through counsel, or otherwise, made some
15   kind of a claim against Weyerhaeuser, or would that be
16   incorrect?
17           MR. CASCINO: That is correct, Your Honor.
18   Weyerhaeuser and the Court has ruled in our favor, the local
19   court up there, basically was dumping the asbestos all over
20   the town. And people that -- and actually they were measuring
21   the levels of asbestos, even as far as a half a mile to a mile
22   from the plant, and they exceeded the then TLV.
23           THE COURT: But my question is different. My
24   question is whether or not Weyerhaeuser would have had a
25   specific indication of an intention on the part of Mr.

```
 1  Seehafer to bring a claim.
 2          Did he ever provide notice to them that he intended
 3  to bring a claim?  Or did he bring a claim previously before
 4  the litigation?
 5          MR. CASCINO:  No, he -- all we did was this Rule 27
 6  Petition, which we were denied.
 7          THE COURT:  All right.  So Ms. Ellis --
 8          MS. ELLIS:  Your Honor, if I may just just a quick
 9  question?  Are you referring to something like a workers' comp
10  claim, or something like that?
11          THE COURT:  Any claim at all that would've put
12  Weyerhaeuser on notice that Mr. --
13          MS. ELLIS:  The first indication I had of Mr.
14  Seehafer's claim was the Rule 27 Petition that we receive
15  sometime in mid-December.
16          THE COURT:  All right.
17          MS. ELLIS:  Early to mid-December.
18          THE COURT:  All right.  Well I'm not - - I
19  understood from Mr. Cascino's papers that there apparently was
20  some reference to a date of January 15th, which I think is
21  Wednesday, as a suggested deposition date.  Is that -- have
22  you guys talked subject to ruling here as to going forward on
23  that particular date?
24          MS. ELLIS:  No, we have not, Your Honor.  But Mr.
25  Cascino has noticed Mr. Seehafer's deposition as a coworker or
```

1    fact witness in a handful of the other cases.  And that
2    deposition is set for January 22nd.
3              MR. CASCINO:  And, Your Honor, we're happy going
4    ahead -- this is Mike Cascino -- we're happy going ahead on
5    the twenty-second.  I can provide verified interrogatory
6    answers, his work history is again two places that he worked
7    at.  And Weyerhaeuser would have those documents.
8              He filed and he signed no 524(g).  I don't see any
9    reason to do any of those in his case at all.
10             And he -- I provided a medical affidavit from his
11   doctor saying we need to do his dep sooner than later.
12             THE COURT:  Okay.
13             MR. CASCINO:  He almost died on us on December 30.
14             THE COURT:  All right.  So I'm going to direct
15   Weyerhaeuser to produce -- to conduct an expedited search with
16   respect to the employment file.  And have that employment file
17   produced to Owens-Illinois, and to plaintiff's, of course, you
18   know, anybody else who's involved in the suit, on or before
19   Monday, the 20th of January, one week's time.
20             And I would expect that you would immediately begin,
21   Ms. Ellis, to contact the appropriate people for an expedited
22   search.  And in the meantime, Mr. Cascino will do what he
23   needs to do to get the appropriate authorization to
24   Weyerhaeuser.
25             I'm taking your comment with respect to the 524(g)'s

Case: 3:14-cv-00286-wmc   Document #: 60-4   Filed: 06/23/14   Page 14 of 18

Casmere - Argument                          13

```
 1    to be an indication, a representation on your part on behalf
 2    of your client that no such affidavits were signed or unsigned
 3    -- sorry, verified or verified, have been prepared or
 4    presented.  Is that, that's what I'm understanding you to say,
 5    and I think on that basis, Mr. Casmere can rely upon it.
 6             Is that what you mean to say, Mr. Cascino?
 7             MR. CASCINO:  That is correct.
 8             THE COURT:  Okay.  All right.  What about Social
 9    Security?
10             MR. CASCINO:  We do not have those records.  But he
11    does have a few income tax returns.  I don't know how far they
12    go back.
13             THE COURT:  Okay.
14             MR. CASCINO:  I will have, and I can get that done
15    by Thursday.
16             THE COURT:  Okay.  Mr. Casmere, anything else on
17    that?  I mean, I would presume authorizations for Social
18    Security takes weeks, and weeks, and weeks, if not months and
19    months, is that right?
20             MR. CASMERE:  I think that's true, Your Honor.  And
21    I think, you know, we'll take whatever we can get in this time
22    frame.  I think there is some claim of a lost wage claim here,
23    so those records that Mr. Cascino says that he has would
24    probably be at least helpful and relevant to that.
25             THE COURT:  All right.
```

1           MR. CASMERE: But will take what we can get on that
2    from them.
3           THE COURT: And I'll also direct him to provide
4    whatever kind of authorization you need or would be required
5    in order to secure the Social Security records, even
6    understanding that they might not be available until -- you
7    might not -- he might not still be living at the time they are
8    produced. But presumably the case through his estate would go
9    on, so I will direct that that be -- that be done immediately.
10          In other words, before Monday the 20th, that Mr.
11   Seehafer -- that Mr. Seehafer provide the appropriate
12   authorizations to Mr. Cascino for that purpose.
13          And then for you guys proceed with respect to Social
14   Security. So with those indications and representations, and
15   we do have court reporter here, so it's on the record. I will
16   grant the motion and would direct that the deposition would go
17   forward on January 22, which I understand is the day that Mr.
18   Seehafer's already scheduled for apparently testimony in some
19   other cases.
20          MR. CASCINO: Your Honor, I would just ask one
21   thing. That the employment records that Weyerhaeuser provides
22   will include his medical surveillance records. They did a
23   surveillance where they were doing x-rays on the clients, a
24   lot of people that worked in the plant on a yearly basis until
25   around 1990.

 1              And then I'd ask that the medical records medical
 2    surveillance records be provided, as well as the other
 3    employment.
 4              THE COURT:  All right.  That sounds to me -- well,
 5    Ms. Ellis, any responses to that?
 6              MS. ELLIS:  No.  We'll produce what we have.  I just
 7    want everyone's expectations to be managed, though, that we
 8    sometimes have employment files, and we sometimes do not.  So
 9    if we have a file for Mr. Seehafer, will produce it, including
10    any surveillance records.
11              THE COURT:  All right.  But what I'm going to ask
12    you to do, even further, Ms. Ellis, is that to the -- if
13    you're not able to produce it, you need to provide an
14    affidavit from an appropriate authorized representative of
15    Weyerhaeuser to the efforts that were made to attempt to
16    search for the material.  And how it would be that you've
17    reached the conclusion that you do not have such files.
18              Both with respect to the employment and also with
19    respect to this medical surveillance that Mr. Cascino's been
20    referring to.
21              MS. ELLIS:  Yes, Your Honor.
22              THE COURT:  You'll have a week to -- you have a week
23    to get that presented to Mr. Cascino.
24              MS. ELLIS:  Okay.
25              THE COURT:  All right, folks, anything else on this?

 1            MS. ELLIS:  I just, Your Honor, to reiterate what
 2   Mr. Casmere said about being sure that our appearance and
 3   attendance at the deposition does not waive any of our
 4   defenses, or objections.  In particular the venue objection is
 5   very important, because like he said, are answer will not even
 6   be due until after this deposition goes forward.
 7            THE COURT:  Yes.  I understand that.  I guess as a
 8   venue issue, I appreciate your desire not to have that issue
 9   waived.  And I would determine that, as far as I'm concerned
10   under the circumstances of this, it is not -- it's not
11   necessarily waived.  You would still have a right to raise it.
12            Mr. Cascino, I assume you have no objection to that?
13            MR. CASCINO:  That is correct, Your Honor.
14            THE COURT:  Okay.  Now I do under -- but I'm
15   implicit in all that is that this is not a jurisdictional type
16   question, which I don't know if we can do any, you know,
17   waivers on it will make any difference, but as a venue
18   question I think that we can, and certainly under the
19   circumstances, given the circumstances, and given what I
20   presume would be the likelihood, if not the certainty, that
21   this case is being filed in the appropriate Federal Court in
22   Wisconsin or Illinois, it would be, you know, relatively
23   properly removed to this Court as part of the MDL.
24            Which and I understand on that basis and given the
25   need for expedited action, Mr. Cascino took the position that

```
                                                              17
 1    he did.
 2              Is that sufficient for your purposes, Ms. Ellis?
 3              MS. ELLIS:  Yes, Your Honor.  Thank you.
 4              THE COURT:  Okay, folks.  Thank you very much.
 5         (Proceedings concluded at 10:45 a.m.)
 6                     C E R T I F I C A T I O N
 7    I, Josette Jones, court approved transcriber, certify that the
 8    foregoing is a correct transcript from the official digital
 9    audio recording of the proceedings in the above-entitled
10    matter.
11    Josette Jones  (Digitally signed by Josette Jones
                     DN: cn=Josette Jones, o, ou,
                     email=Typerjosette@gmail.com, c=US
                     Date: 2014.01.23 11:23:34 -05'00')
12    ----------------------------------          -----------------
13    JOSETTE JONES                               DATE
14    DIANA DOMAN TRANSCRIBING
```