IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
MADISON DIVISION

MILTON BOYER and KATHY BOYER,

      Plaintiffs,                               Case No. 3:14-cv-286

v.

WEYERHAEUSER COMPANY, et al.

      Defendants.

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT OWENS-ILLINOIS,
INC.'S MOTION FOR RELIEF UNDER WIS. STAT. § 802.025

      Defendant Owens-Illinois, Inc. filed its Motion for Relief under Wisconsin Statute § 802.025 (Doc. 52) during the pendency of its motion to dismiss (Doc. 26). For reasons discussed below, Defendant's Motion for Relief under Wisconsin law should be denied.

**I.**    **THE FEDERAL RULES OF CIVIL PROCEDURE AND FEDERAL RULES OF EVIDENCE GOVERN DISCOVERABILITY AND ADMISSIBILITY OF ASBESTOS TRUST CLAIMS MATERIAL IN THIS DIVERSITY ACTION, NOT STATE LAW.**

      Federal Rule of Civil Procedure 26 governs discovery in federal courts. *See generally Beanstalk Group, Inc. v. AM Gen. Corp.*, 283 F.3d 856, 863 (7th Cir. 2002) ("Federal pleading rules . . . govern even in diversity suits."); *Atteberry v. Longmont United Hosp.*, 221 F.R.D. 644, 646 (D. Colo. 2004) ("Discovery in the federal courts is governed by the Federal Rules of Civil Procedure, regardless of whether federal jurisdiction is based on a federal question or diversity of citizenship.") (citing *Everitt v. Brezzel*, 750 F. Supp. 1063, 1065 (D. Colo. 1990)); *CEH, Inc. v. FV Seafarer*, 148 F.R.D. 469, 471 (D. R.I. 1993) ("Discovery is a procedural matter governed in the federal court by the Federal Rules of Civil Procedure and not by state discovery practices unless the Federal Rules so indicate."), *aff'd*, 153 F.R.D. 491. Federal Rule of Civil Procedure

26(a) enumerates the types of information that a party *must* disclose. The claims materials sought by Defendant does not come within that section. Rule 26(b) authorizes the district court to order discovery of relevant matter "for good cause" and subject to Rule 26(c), which permits the district court to limit or even prohibit discovery to protect a party or non-party "from annoyance, embarrassment, oppression, or undue burden or expense."

Defendant now seeks to invoke a Wisconsin statute mandating disclosure of information relating to personal injury claims a plaintiff has filed, "or reasonably anticipates filing," against an asbestos trust, *see* Wis. Stat. § 802.025, including "all documents relating to the settlement of the [asbestos trust] claim," *id*. § 802.025(2)(b)(1).[1] The affected documents include "'Trust claims materials' [which] include claims forms and supplementary materials, proofs of claim, affidavits, depositions and trial testimony, work history, and medical and health records" and "Trust governance documents" which includes "any document that determines eligibility and payment levels, including claims payment matrices, trust distribution procedures, or plans for reorganization, for an asbestos trust." *Id.*, § 802.025(1)(c) & (d). The state statute, which mandates disclosure of such materials on a blanket basis, is in clear conflict with Federal Rule of Civil Procedure 26, which vests the district court with broad discretion to exercise judgment in discovery matters based on standards set forth in the rule.

The Wisconsin statute also conflicts with the provisions in Federal Rule of Civil Procedure 26(b)(3) protecting attorney work-product materials by allowing assertion of objections during discovery. As an example, the requirement of disclosure in the form of a sworn

---

[1] Though the Wisconsin statute refers to discovery and damages, in addition to pleadings, the Legislature did not place this provision in Sections 804 or 901, which concern discovery and evidence, nor in Section 895, which concerns damages. In any event, the Wisconsin law's placement in Section 802 cannot possibly imbue it with "substantive" characteristics for *Erie* purposes. For the reasons to be discussed, the Wisconsin law is plainly procedural under *Erie*.

statement of claims which counsel "reasonably anticipates filing" is in conflict with the protection against disclosure of "mental impressions, conclusions, opinions" under Rule 26(b)(3)(B).

Defendant's motion further fails to mention that Owens-Illinois has activated the Rule 26 discovery mechanism to obtain information about trust fund claims in this case, following federal procedure. On the subject of the trust fund filings, Boyer answered "standard interrogatories" for asbestos cases on May 19, 2014, and also responded to Owens-Illinois' seven interrogatories and document request in "OI's First Set of Bankruptcy Trust Interrogatories and Request For Production to Plaintiffs" on June 13, 2014. (Ex 1 at irrog 36 and Ex 2.). Plaintiff responded in accordance with Rules 26, 33, and 34, including asserting where appropriate the objections to discovery permitted by federal rules.[2] Having utilized the controlling and directly applicable federal rule, Owens-Illinois fails entirely to make any showing of why the federal procedural discovery process should be supplanted in this federal diversity case governed as it is by federal rules with state procedural mechanisms.

---

[2] OI's innuendo that Section 802.025 is necessary because Plaintiff has not cooperated in discovery requests about the bankruptcy filings is both irrelevant and inaccurate. (OI Motion at p.5.) OI only brought the instant motion "For Relief Under Wis. Stat. § 802.025." If the statute does not apply, then the motion must be denied. OI's assertions that Mr. Boyer did not answer questions at his deposition mischaracterize the testimony and have been adjudicated. On July 2, 2014, Magistrate Stephen Crocker held a hearing and denied OI's motion titled "Motion To Compel and Resume the Deposition" of Mr. Boyer. (Doc. #75..)  Responding to the Boyer deposition motion, Plaintiff addressed the same arguments that Boyer did not fully testify to his knowledge about trust fund claims.  The earlier response is quoted below.

> OI took the opportunity at Boyer's deposition to cross examine him regarding his knowledge of and potential exposure to asbestos containing products from various bankrupt entities. (Ex. 3 at 166-72, 175). This line of questioning exhausts Boyer's knowledge.
>
> OI seeks additional information about the potential claims which will be filed for the bankruptcy trusts. Boyer has no knowledge of this process and depends on counsel to make such decisions. Legal strategies or conclusions of counsel about how and what claims to file are not "targeted" discovery as to which Boyer could be questioned. OI has filed a separate motion concerning counsel's intentions for bankruptcy claim discovery which has a separate briefing schedule.

(Doc. # 70 at 5-6.) OI presents no basis in the 802.025 motion to alter the earlier ruling denying the request to redepose Mr. Boyer on the trust claim issues.

In addition, Wisconsin Statute § 802.025(3) makes trust claims materials and trust governance documents admissible into evidence on a blanket basis. This is in clear conflict with Federal Rule of Evidence 403, which recognizes that even evidence of unquestioned relevance may be excluded in certain circumstances, such as unfair prejudice. And the state law is also in clear conflict with Federal Rule of Evidence 408. That Rule provides:

> Evidence of the following is not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
>
> > (1) furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; and
> >
> > (2) conduct or a statement made during compromise negotiations about the claim . . .

Fed. R. Evid. 408. The rule by its terms extends beyond settlement offers to include offers to accept settlement offers and statements made during settlement negotiations. *See id*. The purpose of Rule 408 "is to encourage settlements." *Central Soya Co., Inc. v. Epstein Fisheries, Inc.*, 676 F.2d 939, 944 (7th Cir. 1982). Thus the mandatory disclosure and blanket admissibility provisions of the Wisconsin law, directly conflict with Federal Rules of Civil Procedure 26 and Federal Rules of Evidence 403 and 408. As the magistrate court recognized in the asbestos case of *Dent v. Westinghouse*, No. 08-83111, 2010 WL 56054 (E.D. Pa. Jan, 4, 2010): "A request for settlement information lies at the crossroads of Federal Rule of Civil Procedure 26 and Federal Rule of Evidence 408."

To the extent that the statute makes documents admissible that would otherwise be inadmissible hearsay, it further conflicts with other Federal Rules of Evidence, namely Rules 801-804. A principal purpose of discovery of trust fund information by defendants is allegedly to obtain evidence of other exposures that could be introduced to a jury. Examples of trust

4

documents that might be inadmissible are 1) claim forms which contain only allegations and are not proof of other exposures and 2) affidavits of coworkers about exposures that are normally hearsay if offered as evidence at trial.

The statute also compounds and alters the discovery practices in the federal courts. Owens-Illinois asserts in its motion that over 60 trust funds exist. (Doc. 52 at 3.) The statute empowers a defendant to bring an unlimited number of motions during the discovery process to obtain court orders to file claims against trust funds. The motion practice is authorized in a manner which fails to follow the Federal Rule standards for assessing discoverable evidence. Each motion requires the court to hold mini-trials on the merits of evidence against a non-party. The merits of evidence relating to a claim not pending before the court is distinctive from the Rule 26 standard that requires information to be relevant and calculated to lead to discovery of admissible evidence in the action pending before the court. The statutory provision of a mandatory stay if the claim must be filed leads to sequencing of the discovery in conflict with Rule 26(d)(2) because defendants can file the trust fund motions and stay other discovery almost at will.

Where the state law conflicts with a federal rule, the court sitting in diversity need not determine whether the rule is procedural: the federal rule controls. *Hanna v. Plumer*, 380 U.S. 460, 471 (1965) (So long as a federal rule is authorized under the Constitution and the Rules Enabling Act, it applies to a federal diversity case.).[3]

---

[3]Although *Hanna v. Plumer*, 380 U.S. 460 (1965), involved a Rule of Civil Procedure, the Rules of Evidence are likewise presumptively controlling, even if substantive. "Because the Federal Rules of Evidence were enacted directly by Congress, their validity vis-à-vis state law and the principles of the *Erie* doctrine stands on ground even more firm than that of the Federal Rules of Civil Procedure." C. Wright, A. Miller & E. Cooper, 19 *Federal Practice and Procedure* 2d § 4512 (2010). That is because unlike the Federal Rules of Civil Procedure, the Federal Rules of Evidence were not enacted pursuant to the Rules of Enabling Act. "Their validity is governed solely by the Constitution, but since all of the Rules of Evidence can be viewed rationally as rules of procedure (the constitutional standard announced in [*Hanna*]), they all clearly are constitutional." *Id.*

Several decisions in the federal multi-district asbestos litigation in the Eastern District of Pennsylvania, have interpreted the extent to which Rule 408 of the Federal Rules of Evidence allows disclosure of documents submitted to asbestos trust funds *See Shepherd v. Pneumo-Abex, LLC*, MDL 875, No. 09-91428, 2010 WL 3431633, at *2 (E.D. Pa. Aug. 30, 2010); *Lyman v. Union Carbide Corp.*, MDL 875, No. 09-62999 (E.D. Pa. Sept. 18, 2009). The district courts allowed discovery of narrow categories of documents submitted to trust funds so long as settlement information protected under Rule 408 is redacted. Judges within the same district court have also held that plaintiff was not required to disclose settlement agreements or releases with asbestos trusts. *See Anderson v. Ford Motor Co.*, No. CIV.A. 09-69122, 2010 WL 4156256 (E.D. Pa. Oct. 20, 2010); *Dent v. Westinghouse*, No. 08-83111, 2010 WL 56054 (E.D. Pa. Jan, 4, 2010); *Allison v. Goodyear Tire & Rubber Co.*, No. 07-69104, 2010 WL 3384723, at *1-2 (E.D. Pa. Aug.19, 2010). None of these decisions required disclosure of any documents within the category of "trust governance documents" mandated for disclosure by Wisconsin Statute § 802.025. These judges based their holding on interpretations of Federal Rule of Civil Procedure 26 and Federal Rule of Evidence 408. These cases thus establish that the federal rules, not state procedures, govern disputes about discovery of trust documents. These federal rules, moreover, vest the district court with discretion to decide the scope of discovery; by comparison, the Wisconsin law "mandates" certain disclosures of extensive categories of "trust claim" and "trust governance" documents including the thoughts and strategies of counsel about future filings. Its application here would impermissibly usurp federal judicial discretion over discovery provided by the federal rules.[4]

---

[4] Plaintiffs take no position on the correctness of the individual Rule 26 determinations in these cases. But Plaintiffs agree with these cases insofar as they apply the federal rules to these precise types of discovery disputes.

Finally, it is highly significant that the asbestos trust TDPs, which must be approved by the Bankruptcy Court for conformity with 11 U.S.C. § 524(g), generally provide that the claims information submitted by the claimant is deemed to be settlement negotiations for the purposes of Rule 408. Section 6.5 of the TDP of the Babcock and Wilcox Trust, for example, states:

> All submissions to the PI [Personal Injury] Trust by a holder of a PI Trust Claim of a proof of claim form and materials related thereto *shall be treated as made in the course of settlement discussions* between the holder and the PI Trust, and intended by the parties to be confidential and *to be protected by all applicable state and federal privileges, including but not limited to those directly applicable to settlement discussions*.

*Available at* http://www.bwasbestostrust.com/wp-content/uploads/2014/04/Revised-B-W-TDP-1.pdf (emphasis added).

Hence, the claim information sought by Defendant is generally inadmissible under Rule 408 of the Federal Rules of Evidence and is not discoverable under Rule 26 of the Federal Rules of Civil Procedure unless and until Defendant can establish that the particular information sought is otherwise admissible or may lead to admissible evidence.

Defendant, in its motion, engages in an *Erie* analysis, but "[a] full-blown *Erie* analysis is unnecessary if the matter in question is covered by a Federal Rule of Civil Procedure. Federal courts must apply the federal rules without regard to whether the matter might be labeled substantive or procedural." 19 *Fed. Prac. & Proc. Juris.* § 4508. *See also Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, --- U.S. ----, 130 S. Ct. 1431, 1437 (2010) (plurality opinion) ("We do not wade into *Erie*'s murky waters unless the federal rule is inapplicable or invalid.").

In any event, an *Erie* analysis would not help Defendant. Even if no federal rule directly addressed the discoverability or admissibility of this trust claim information, the Wisconsin statute is clearly procedural and thus inapplicable in this diversity suit.

Here, the Wisconsin law is procedural. Wisconsin Statute § 802.025 is located in the Wisconsin Rules of Civil Procedure, and by its subtitle concerns "pleadings" and "discovery"—matters that are typically procedural. The governor's statement upon signing indicates the purpose was not to enlarge the rights of defendants or diminish those of plaintiffs, but "to ensure transparency in the lawsuit process and stop trial lawyers from double-dipping." Scott Bauer, *Walker signs asbestos bill opposed by veterans*, Chicago Sun Times, Mar. 27, 2014. Federal courts as well have held that discovery rules are procedural. *Sibbach v. Wilson & Co.*, 312 U.S. 1 (1941); 1 *Moore's Federal Practice* ¶ 0.317[3].

Pleading rules that address matters apart from the elements of a cause of action are also procedural. *See Carnell Constr. Corp. v. Danville Redevelopment & Housing Auth.*, 745 F.3d 703 (4th Cir. 2014) (Although state law governs federal courts' determination of the nature of damages sought, the procedural requirements for pleading damages are governed by the Federal Rules of Civil Procedure.); *LaCross v. City of Duluth*, 713 F.3d 1155 (8th Cir. 2013); *Hackel v. National Feeds, Inc.*, 986 F. Supp. 2d 963 (W.D. Wis. 2013) (A federal court sitting in diversity applies federal pleading requirements even when the claim pleaded arises under state rather than federal law.). The fact that the penalty for non-compliance is the sanction for failure to make discovery, rather than dismissal for failure to state a claim, indicates that, to the extent that the Wisconsin law is deemed a pleading requirement, it is procedural.

Contrary to Defendant's suggestions, the Wisconsin rule is not substantive in light of *Erie*'s policies. The Wisconsin rule would not rationally affect private ordering or encourage forum shopping. For example, insofar as set-offs are concerned, *see* Wis. Stat. § 802.025(6), set-offs are available in federal court under federal procedure. The asserted state policy of avoiding "double-dipping" does not change the procedural character and make the statute "substantive."

Other substantive provisions of Wisconsin state law, applicable in federal court and not part of the discovery process, already prevent "double-dipping." These include the apportionment of liability under Wisconsin Statute § 895.045, the doctrine in *Pierringer v. Hoger,* 21 Wis. 2d 182, 124 N.W.2d 106 (Wis. 1963), that prevents further litigation as to settling defendants, and contribution rights for which the statute of limitations does not begin to run until judgment is entered under Wisconsin Statute § 893.92. The same interests against "double- dipping" are fully served by the federal practice of authorizing the court to set-off amounts received from third parties for the same injury. *See Dutton v. Todd Shipyards Corp.*, MDL 875, No. 09-62916, 2009 U.S. Dist. LEXIS 107936, at *4 (E.D. Pa. 2009) (citing *Lewin v. Am. Export Lines, Inc.*, 224 F.R.D. 389, 396 (N.D. Ohio 2004)) (ruling that disclosure of settlements should be deferred until after the entry of the judgment when the court would entertain a defendant's set-off argument). This is especially true where the third party was not a party in the case. *See Anderson*, 2010 WL 4156256, at *2 (distinguishing between settlements with parties and with non-parties).

In sum, the discoverability and admissibility of asbestos trust materials are directly governed by federal rules, which preempt the application of Wisconsin's procedural regime. Even if no federal rule were directly applicable, the discovery and admissibility of these documents is procedural, rather than substantive, and may not be applied in federal court under *Erie,* which makes plain that the Wisconsin statute cannot be considered substantive. The Wisconsin law simply governs the manner and means by which a litigant's rights are enforced – the mechanics of the litigation rather than the elements of the cause of action, and thus is procedural for *Erie* purposes.

For all these reasons, Defendants must adhere to the customary discovery procedures that exist under the federal rules. Under these rules, this court has discretion to determine, if and

when a dispute arises, the scope of trust fund related information and documents Plaintiffs must produce. Because no trust fund claims have been filed at this time, no controversy exists for this court to rule upon.[5] The court also has no basis under federal discovery rules to consider a motion to impose the state procedural provisions of Wisconsin Statute § 802.025 that require determination of what and when trust fund claims must be filed.

II.     **DEFENDANT CANNOT INVOKE THE WISCONSIN STATUTE TO REQUEST A COURT REQUIRE PLAINTIFF TO FILE CLAIMS AGAINST CERTAIN ASBESTOS TRUSTS OR FOR A STAY UNTIL SUCH CLAIMS ARE FILED BECAUSE THAT STATE LAW DOES NOT APPLY TO THIS FEDERAL SUIT.**

For the same reasons discussed above, the Wisconsin statute does not apply to this federal diversity suit. Because it does not, Defendant cannot invoke its provisions to require Plaintiffs to file claims, nor is it entitled to a stay until such claims are filed

III.    **THE FEDERAL INTEREST IN THE UNIFORM APPLICATION OF BANKRUPTCY LAW AND THE GOVERNANCE OF TRUSTS SET UP UNDER 11 U.S.C. § 524(g) SHOULD PREVAIL OVER STATE INTERESTS, WHICH ARE NOT DIRECTLY IMPLICATED IN A FEDERAL DIVERSITY CIVIL ACTION.**

Federal bankruptcy law comprehensively governs the treatment of asbestos trusts set up under it in a way that conflicts with and thus preempts the Wisconsin law invoked by Defendant in its motion. In prescribing rules governing the discovery and admissibility of information provided to an asbestos trust, and in some circumstances requiring asbestos claimants to file such claims, the Wisconsin legislature intrudes on an area constitutionally reserved for the federal government. The Constitution grants to Congress the power "To establish . . . *uniform* Laws on the subject of Bankruptcies throughout the United States." U.S. Const. art. I, § 8, cl. 4 (emphasis added). The constitutional mandate of uniformity of the laws of bankruptcy necessarily limits the role of state law. Thus, "[i]n determining what claims are allowable and how a debtor's assets

---

[5] As Defendant recognizes, Plaintiffs have already told Defendant in discovery responses that they have not filed any claims against any asbestos trust.

shall be distributed, a bankruptcy court does not apply the law of the state where it sits. . . . [B]ankruptcy courts must administer and enforce the Bankruptcy Act as interpreted by this Court in accordance with authority granted by Congress to determine how and what claims shall be allowed under equitable principles." *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 162-63 (1946). In addition, Congress has vested the Supreme Court with "the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under title 11." 28 U.S.C. § 2075.

In 1994, to address the growing numbers of claims by asbestos victims, Congress amended the Bankruptcy Code to add 11 U.S.C. § 524(g). *See* Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, § 111, 108 Stat. 4106, 4113-17. Section 524(g) affords those companies seeking to reorganize under Chapter 11 an opportunity to channel all future asbestos-related liabilities to an asbestos personal injury trust, funded by the company's securities and established as part of the company's reorganization. Such trusts are established under the supervision of the federal bankruptcy court with careful attention to establishing procedures that serve the federal interest in not only providing for the equitable treatment of current claimants, but also in conserving trust resources for the benefit of future asbestos victims. *See, e.g., In re Celotex Corp.*, 487 F.3d 1320, 1324-26 (11th Cir. 2007) (detailing the careful balancing of interests of the debtor company, various classes of creditors, and other stakeholders required to establish a trust under section 524(g)). The fund must be confirmed by the bankruptcy court and federal district court as compliant with section 524(g).

Each asbestos trust adopts a TDP governing the disposition of claims. "Among other things, the TDP coordinates claim processing, assigns payment values for various asbestos-related diseases, sets medical criteria for the different diseases, prescribes procedures for

reviewing the claims, and establishes a dispute resolution process. These provisions function to ensure that all claimants, both current and future, receive equitable compensation for their asbestos-related injuries." General Accountability Office ("GAO"), *Asbestos Injury Compensation: The Role and Administration of Asbestos Trusts*, at 15 (2011), *available at* http://www.gao.gov/assets/590/ 585380.pdf. The TDP contains the processes that govern the review, valuing, and payment of asbestos-related personal injury claims. With respect to the valuation of claims, the trusts establish a schedule of payments for particular asbestos-related diseases that reflects the company's historical payments under the tort system.

> Most trusts cannot pay the full value of a claim and still maintain sufficient assets to compensate all present and future claimants. As a result, trusts determine a payment percentage, a fraction of the full value that can be paid to present claimants and still maintain sufficient assets for future claims. Payment percentages vary across trusts and TDPs we reviewed specify a range of payment percentages from 1.1 percent to 100 percent for certain diseases, such as mesothelioma or asbestosis. The median payment percentage across trusts is 25 percent, according to the 2010 RAND Corporation study.

GAO, at 21. *See* Lloyd Dixon, Geoffrey McGovern & Amy Coombe, *Asbestos Bankruptcy Trusts: An Overview of Trust Structure and Activity with Detailed Reports on the Largest Trusts* (RAND Institute for Civil Justice 2010) *available at*:

http://www.rand.org/content/dam/rand/pubs/ technical_reports/2010/RAND_TR872.pdf.[6]

Another feature of most asbestos trusts is the confidentiality provision. Typically, the TDP provides that claim materials submitted to the trust are held as confidential and deemed to be settlement negotiations. The trust will provide such information to an outside party pursuant

---

[6] For a general discussion of how trust funds are developed, *see In re: Celotex Corp.*, 487 F.3d 1320 (11th Cir. 2007).

to a subpoena. *See* Section 6.5, TDP of the Babcock and Wilcox Trust, for example, *quoted supra*, at p. 5.

That confidentiality provision "is at least substantially similar, if not identical, to section 6.5 of most trusts' TDPs." Lester Brickman, *Fraud and Abuse in Mesothelioma Litigation*, 88 Tul. L. Rev. 1071, 1100 (2014). The confidentiality provision furthers the objectives of the trust in two ways. First, by preserving the confidentiality of private medical and other information submitted by claimants, the trust fosters free and frank exchanges that lead to settlements of disputes. *See United States v. Reserve Mining*, 412 F. Supp. 705, 712 (D. Minn. 1976); Fed. R. Evid. 408 Advisory Committee Note; Wayne D. Brazil, *Protecting the Confidentiality of Settlement Negotiations*, 39 Hastings L.J. 955, 959 (1988). *See also Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003) (recognizing settlement negotiations privilege).

Secondly, as asbestos trust officials have indicated, responding to routine requests from third parties for claims materials would deplete the trust's assets and would contravene the congressional command that the trust "is to use its assets or income to pay claims and demands." 11 U.S.C. § 524(g)(2)(b)(1)(B)(IV). *See* GAO, at 29-30. The state has no countervailing strong interest in that the information sought by the tort defendant can be obtained directly from the tort plaintiff through discovery. In those relatively few tort actions resulting in a verdict in favor of the asbestos victim, federal practice permits discovery of amounts paid to the plaintiff for the same injury for the purpose of allowing a set-off from the judgment. Finally, as indicated by the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, Advisory Committee on Bankruptcy, Subcommittee on Business Issues, any argument that the

asbestos trusts should be providing more information to tort defendants is appropriately made to Congress, which wields the authority to amend section 524(g). GAO, at 32.

In sum, section 524(g) and the procedural rules incorporated into the TDPs of the asbestos trusts established thereunder were intended by Congress to provide compensation on a fair basis to present and future claimants harmed by exposure to the asbestos products of companies undergoing Chapter 11 bankruptcy while permitting those companies to move forward. To the extent that Wisconsin Statute § 802.025 conflicts with the confidentiality of claims materials, it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hillman v. Maretta*, 133 S. Ct. 1943, 1950 (2013), and is preempted.

## IV.   WISCONSIN STATUTE § 802.025 RAISES SERIOUS CONSTITUTIONAL CONCERNS THAT CAN BE AVOIDED BY A NON-CONSTITUTIONAL RULING THAT THE STATUTE DOES NOT APPLY TO THIS FEDERAL DIVERSITY SUIT.

Plaintiffs' non-constitutional arguments for why Wisconsin Statute § 802.025 does not apply to this federal suit are sufficient bases for denying Defendants' Motion, and the Court need not consider the Wisconsin law's constitutionality. But aspects of this Wisconsin law, in particular section 802.025(6), if applied here, would violate the Wisconsin Constitution's guarantees of equal protection, due process, separation of powers, right to trial by jury, and rights against unconstitutional takings and special legislation. Defendant has not sought relief under this particular provision of the Wisconsin statute, and thus the issue has not been joined. Nevertheless, the Court can avoid these constitutional issues entirely by ruling that the Wisconsin law does not apply to this federal diversity suit. *See Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) (courts should avoid serious constitutional issues where possible by ruling on a non-constitutional ground).

14

The constitutional problems section 802.025(6) would present, if applied to this suit, are several. First, section 802.025(6)'s application here would deprive plaintiffs any right to recover vested property interests without due process because it mandates transfer of all rights to the non-party funds from plaintiffs who proceed to trial without hearings on the transfer of property. Traditionally, rights to offsets or contribution are viewed at the post-judgment stage with the opportunity to assert any applicable defenses, including, for example, that the awards may be for different diseases or for different beneficiaries.[7] Similarly, the statute deprives plaintiffs' vested property right to unfettered recovery of damages and makes recovery contingent on plaintiff first assigning defendant all pending, current, and future rights or claims that plaintiff has or may have for personal injury against an asbestos trust. Beyond the due process issues raised by these requirements, it also conflicts with the Wisconsin Constitution's certain remedy clause. Wis. Const. art. I, § 9. Applying this important constitutional protection, the Wisconsin Supreme Court has held it improper to "'insulate[] a wrongdoer from being exposed to a lawsuit just because there exists a remedy against another wrongdoer.'" *Thomas ex rel. Gramling v. Mallett*, 285 Wis. 2d 236, 298-99, 701 N.W.2d 523, 554 (Wis. 2005) (quoting with approval, 275 Wis. 2d 377, 394, 685 N.W.2d 791, 799 (Wis. Ct. App. 2004) (Brown, J., concurring)). Thus, "'if that injury was brought about by separate wrongs against the person, that person is entitled to a remedy for each 'wrong.'" *Id*. The certain remedy clause thus protects plaintiffs from precisely the type of control over their cause of action that the statute at issue transfers to defendants as the price of seeking justice.

Wisconsin's statute also adds an additional restriction that, following a verdict in favor of the plaintiff, the plaintiff may not recover any damages until he or she assigns to the defendant

---

[7] In addition, under the trust fund rules, a defendant cannot become the counsel representing the victim.

all pending, current, and future rights or claims he or she has or may have for a personal injury claim against an asbestos trust. This divergence by the Wisconsin legislature results in the unlawful deprivation of due process and an additional violation of the certain-remedy guarantee as it amounts to state action requiring the purchase of justice. *See Mulder v. Acme-Cleveland Corp.*, 95 Wis. 2d 173, 190, 290 N.W.2d 276, 284 (Wis. 1980). In addition, if the required assignment of claims applied here, it would violate federal and state due process by depriving Plaintiffs' rights without a hearing. Requiring Plaintiffs to assign their claims per § 802.025(6) here would be an unconstitutional taking in violation under both state and federal law because § 802.025(6) "takes" a vested property right without a public purpose and denies plaintiffs just compensation. U.S. Const. amend. V; Wis. Const., art. I, § 13. The proper procedure would be for a defendant to file a post-judgment motion, if necessary, to obtain the rights to the trust fund monies as an offset or for other reasons.

Moreover, this provision would violate the separation of powers doctrine. While not explicitly set forth in the Wisconsin Constitution, separation of powers is well-established as implicit within it, *see State ex rel. Friedrich v. Circuit Court for Dane Cnty.*, 192 Wis. 2d 1, 13-14, 531 N.W.2d 32, 36 (Wis. 1995), and "[e]ach branch has a core zone of exclusive authority into which the other branches may not intrude," *id.* To this end, the judiciary has inherent authority necessary to preserve its constitutional duty to oversee the administration of justice. *Flynn v. Dep't of Admin.*, 216 Wis. 521, 550-52, 576 N.W.2d 245, 256-57 (Wis. 1998).

Section 802.025 establishes procedures that interfere with judicial fact-finding and impede individuals' right to open courts and access to justice. The statute's provisions shorten the time to file a case, extend the length of trial, and facilitate increased delay before a judicial decision can be reached. This undermines the judicial fact-finding role and unconstitutionally

16

commanders the adjudicative process by legislative fiat. And section 802.025 further invades judicial control over evaluation of evidence by mandating submission of plaintiffs' trust form claims and treating them as presumptively "relevant and authentic." More concerning, the statute dictates what weight juries must give to evidence of certain trust claim materials in assigning fault and liability. In statutorily prescribing the outcome in sufficiency of evidence determinations [about liability], the Wisconsin legislature intrudes on an area constitutionally reserved for the judicial branch in contravention of separation of powers doctrine. Indeed, this statutory provision directly interferes with the jury's fact-finding role and tampers with the judicial fact-finding process overall. For many of these same reasons, the Wisconsin statute contravenes the fundamental right to trial by jury. *See* Wis. Const. art. I, § 5.

What is more, section 802.025 is an improper special law in violation of article IV, section 18 of Wisconsin's Constitution in that it subjects asbestos litigants to restrictions—in particular, it takes away from asbestos plaintiffs the right to pursue alternative sources of recovery—inapplicable to any other type of litigation. Article IV, section 18 of Wisconsin's constitution bans the legislature from passing any private or local bill that embraces more than one subject, and requires that such subject shall be expressed in the title. Wis. Const. art. IV, § 18. This provision was adopted as part of the original Wisconsin Constitution of 1848 and has remained unchanged. *See Davis v. Grover*, 480 N.W.2d 460, 465 (Wis. 1992). Article IV, section 18 has three underlying purposes: (1) to encourage the legislature to devote its time to the state at large, its primary responsibility; (2) to avoid the specter of favoritism and discrimination, a potential of which is inherent in laws of limited applicability; and (3) to alert the public through its elected representatives to the real nature and subject matter of legislation under consideration. *Id.* at 465. The provisions of article IV, section 18 intend to ensure legislative accountability to

the public and "guard against the danger of legislation, affecting private or local interests, being smuggled through the legislature." *Id.* at 519.

*Milwaukee Brewers Baseball Club v. Department of Health and Social Services*, 387 N.W.2d 254, 269 (Wis. 1986), sets forth the test for determining whether a statutory provision constitutes a private or local law under article IV, section 18. It provides that "a legislative provision which is specific to any person, place or thing is a private or local law within the meaning of [Wis. Const.] art. 4, sec. 18, unless: 1) the general subject matter of the provision relates to a state responsibility of statewide dimension; and 2) its enactment will have direct and immediate effect on a specific statewide concern or interest." *Id.* at 269. Only if both parts of this two-part analysis are met is this statute permitted under Wis. Const. art. IV, § 18. *Id.* Here, the general subject matter of § 802.025 neither relates to a state responsibility of statewide dimension, nor will its enactment have a direct and immediate effect on a specific statewide concern or interest.

Even assuming the propriety of assignability, the statute's application to this suit would violate the Wisconsin Constitution's guarantee of equal protection. Wis. Const. art. I, § 1. Section 802.025(6) creates two classes of plaintiffs: those who prevail against defendants found at least 51% liable, and those who prevail against than defendants less than 51% liable. The former retain the right to seek full recovery of their awarded damages, but section 802.025(6) expressly prohibits the latter class from recovering damages beyond defendants' percentage of liability. For this latter class, the statute makes it impossible to ever recover more than 50% of the full damage award. This discrimination is arbitrary and lacks a rational basis. What is more, under section 802.025(6), defendants are treated more favorably than plaintiffs in recovering

compensation for injuries because of the operation of the 51 percent rule—specifically, a defendant is entitled to a larger recovery than a plaintiff might obtain.

Still, it is unnecessary to reach these constitutional flaws in the Wisconsin statute because it is wholly inapplicable to an action in federal court.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Relief under Wisconsin Statute § 802.025 should be denied. This Court should utilize the customary procedures and rules for discovery and admission of evidence under the federal rules in resolving disputes, if any arise, about discovery of trust fund information.

Date: July 21, 2014                                    Respectfully submitted,

                                                       /s/Robert G. McCoy
                                                       Robert G. McCoy
                                                       Michael P. Cascino
                                                       Allen D. Vaughan
                                                       Cascino Vaughan Law Offices, Ltd.
                                                       220 South Ashland Avenue
                                                       Chicago, Illinois 60607
                                                       (312) 944-0600
                                                       (312) 944-1870 (fax)
                                                       ecf.cvlo@gmail.com

                                                       *Attorney for Plaintiffs*