IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MILTON BOYER and KATHY BOYER,

                                    Plaintiffs,                        OPINION AND ORDER

    v.

                                                                            14-cv-286-wmc

WEYERHAEUSER COMPANY, 3M COMPANY,
METROPOLITAN LIFE INSURANCE
COMPANY, and OWENS-ILLINOIS INC.,

                                  Defendants.

       Plaintiffs Milton and Kathy Boyer bring claims against defendants arising out of Milton's exposure to asbestos and a related disease, malignant mesothelioma. Before the court are two motions to dismiss. In the first motion, defendant Weyerhaeuser Company, the former owner of a door manufacturing plant where Milton Boyer worked and asbestos fireproofing products were produced, moves to dismiss the claims brought against it as barred by Wisconsin's Workers' Compensation Act. (Dkt. #8.) In the second motion, defendant Owens-Illinois Company seeks dismissal of product liability claims premised solely on its licensing of a patent claiming a fireproof door. (Dkt. #86.) For the reasons that follow, the court will grant both motions and dismiss Weyerhaeuser and Owens-Illinois as defendants.[1]

---

[1] Owens-Illinois also filed a motion to order plaintiffs' compliance with Wis. Stat. § 802.025, a new state statute requiring disclosure of asbestos trust claims, among other provisions. (Dkt. #52.) Because the court grants Owens-Illinois' motion to dismiss, it need not reach the merits of this motion, and accordingly, will deny it as moot.

ALLEGATIONS OF FACT[2]

**A. The Parties**

Plaintiff Milton Boyer previously was employed at a door manufacturing plant in Marshfield, Wisconsin, where asbestos fireproofing products were manufactured and products containing asbestos were used in the manufacturing process. Plaintiff Kathy Boyer is his wife.

Defendant Weyerhaeuser Company is the former owner of the Marshfield plant. Weyerhaeuser is legally responsible for the conduct of Roddis Plywood Corporation, the former (former) owner and operator of the Marshfield plant. Defendant 3M designed, manufactured and sold masks for personal breathing protection in occupational settings, including the 3M 8710 mask. Defendant Metropolitan Life Insurance Company allegedly conspired to conceal information about the health hazards of asbestos from both individual end-users and industry. Finally, defendant Owens-Illinois sold licenses for a patent to manufacture fireproof doors, which in practice incorporated asbestos-containing cores. Owens-Illinois also manufactured, sold and designed asbestos products, including a fireproof door core under the brand name "Kaylo."

**B. Exposure to Airborne Asbestos Fibers**

Plaintiffs allege that Milton Boyer "inhaled airborne asbestos fibers released during operations at the Marshfield plant as a result of the following:"

---

[2] The court assumes the following facts as alleged, viewed in a light most favorable and conceding all reasonable inferences to plaintiffs. *See Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 493 (7th Cir. 2011).

> a. his employment at the Marshfield plant beginning in or around 1973;
>
> b. asbestos fibers contaminating the home, auto, lunchroom, and other locations where non-work related activities were performed;
>
> c. asbestos fibers released from the Marshfield plant operations, which contaminated the surrounding community; [and]
>
> d. transport of asbestos fibers from the Marshfield plant to other locations.

(1st Am. Compl. (dkt. #69) ¶ 14.) Plaintiffs allege that as a result of these exposures, Milton Boyer "suffered from the asbestos related disease malignant mesothelioma." (*Id.* at ¶ 16.)

In pleading negligent and intentional nuisance claims against defendant Weyerhaeuser in particular, plaintiffs further allege that:

> Weyerhaeuser, during operations to manufacture fire doors at the Marshfield plant beginning on the 1950s, caused asbestos fibers to be released and contaminate the air in various settings in which no work related activities were being conducted or the plaintiff was not engaged in worked related activities, including without limitation:
>
> a. the community surrounding the plant;
>
> b. homes and vehicles;
>
> c. landfills; and
>
> d. activities on the premises which were not work related.

(*Id.* at ¶ 43.) Plaintiffs also allege that "the operations of Weyerhaeuser's Marshfield plant caused dangerous asbestos fibers to be transported to areas more distant through various means, including without limitation:"

3

>   a. worker clothing, personal effects, hair and skin which had been contaminated by asbestos fibers at the plant; and
>
>   b. collecting, removing, hauling, and dumping asbestos waste materials.

(*Id.* at ¶ 44.)

## JURISDICTION

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. Plaintiffs Milton and Kathy Boyer are citizens of Wisconsin. (1st Am. Compl. (dkt. #69) ¶ 1.) Defendant Weyerhaeuser Company is incorporated in the state of Washington, with its principal place of business in Washington. (*Id.*, Ex. A (dkt. #69-1).) Defendant 3M Company is incorporated in the state of Delaware, with its principal place of business in Minnesota. (*Id.*) Defendant Metropolitan Life Insurance Company is incorporated in the state of Delaware, with its principal place of business in New York. (*Id.*) Finally, defendant Owens-Illinois, Inc. is incorporated in the state of Delaware, with its principal place of business in Ohio. (*Id.*) In light of the extent of plaintiff Milton Boyer's injuries, the amount in controversy also exceeds $75,000.

On the face of the amended complaint, plaintiffs purport to name three other, unnamed insurance companies as defendants. The law is clear, however, that "because the existence of diversity jurisdiction cannot be determined without knowledge of every defendant's place of citizenship, 'John Doe' defendants are not permitted in federal diversity suits." *Howell by Goerdt v. Tribune Entm't Co.*, 106 F.3d 215, 218 (7th Cir. 1997). The court, therefore, will dismiss these unnamed defendants. *See id.* Should

4

plaintiffs learn the name of these insurance companies in a timely fashion and wish to add them as defendants -- assuming their addition would not destroy complete diversity -- plaintiffs may seek leave from the court to amend their complaint.

OPINION

I.  Weyerhaeuser's Motion to Dismiss

Weyerhaeuser posits two bases for dismissing plaintiffs' complaint.  First, Weyerhaeuser contends that plaintiff's claims of negligent and intentional nuisance -- the sole claims alleged against Weyerhaeuser[3] -- are barred by the exclusivity provision of Wisconsin's Workers' Compensation Act ("WCA"), Wis. Stat. § 103.03(2).  Second, defendant contends that plaintiffs' allegations fail to meet the requirement of Federal Rule of Civil Procedure 8.  Because the court finds that plaintiffs' claims are barred by the WCA, the court need not reach the second basis for dismissal.

A.  Overview of Wisconsin's Workers Compensation Act

Wisconsin Statute § 102.03(1) defines employer liability where the following applicable "conditions" occur:

> (a) Where the employee sustains an injury.
>
> (b) Where, at the time of the injury, both the employer and employee are subject to the provisions of this chapter.

---

[3] Plaintiffs also seek punitive damages (Count VIII) against all defendants, but those damages are not available absent liability for an underlying tort.  *See, e.g.*, *Capital Times Co. v. Doyle*, 2011 WI App 137, ¶ 7, 337 Wis. 2d 544, 807 N.W.2d 666 (explaining that under Wisconsin law, punitive damages are only available based on proof of underlying cause of action and actual damages).

> (c)1. Where, at the time of the injury, the employee is performing service growing out of and incidental to his or her employment.
>
> 2. Any employee going to and from his or her employment in the ordinary and usual way, while on the premises of the employer, or while in the immediate vicinity of those premises if the injury results from an occurrence on the premises; . . .
>
> . . .
>
> (e) Where the accident or disease causing injury arises out of the employee's employment.
>
> . . .

Subsection (2) of the same statute provides that "Where such conditions exist the right to the recovery of compensation under this chapter shall be the *exclusive* remedy against the employer, any other employee of the same employer and the worker's compensation insurance carrier." Wis. Stat. § 102.03(2) (emphasis added).

Because it was the parties' focus in briefing Weyerhaeuser's motion to dismiss, the court will also focus on the requirements that (1) "the employee is performing service growing out of and incidental to his or her employment" under § 102.03(1)(c)1; and (2) "the accident or disease causing injury arises out of the employee's employment," § 102.03(1)(e). *See Johnson v. Hondo, Inc.*, 125 F.3d 408, 418 (7th Cir. 1997) ("In order for employer liability under the Worker's Compensation Act to be triggered, the injured employee at the time of injury had to have been 'performing service growing out of and incidental to his or her employment' and 'the accident or disease causing injury [must have arisen] out of the employment.'") (citing *Weiss v. City of Milwaukee,* 208 Wis. 2d 95, 105 559 N.W.2d 588, 591 (1997)).

### B. Analysis

Anticipating plaintiffs' response, defendant's opening brief focused on the "dual persona" exception to the WCA exclusivity provision. (Def.'s Opening Br. (dkt. #9) 7-1 (discussing *Henning v. Gen. Motors Assembly*, 419 N.W.2d 551, 552 (Wis. 1988)).) In their opposition brief, however, plaintiffs contend that the WCA does not govern plaintiffs' injuries because the injury was not sustained while plaintiff was "performing service growing out of and incidental to his or her employment" and because "[p]laintiff's community exposures and take-home exposures do not as a matter of law . . . arise from the 'course of employment.'" (Pls.' Opp'n (dkt. #85) 3.)

With respect to whether Boyer's injury was sustained while he was performing service growing out of and incidental to his employment, this requirement is easily met by the facts as plead. As the Wisconsin Supreme Court explained in *Weiss*, 208 Wis. 2d at 105, 559 N.W.2d at 591:

> [P]erforming service growing out of and incidental to his or her employment is used interchangeably with the phrase course of employment. Both phrases refer to the time, place, and circumstances under which the injury occurred.
>
> An injury is said to arise in the course of the employment when it takes place within the period of the employment, at a place where the employee reasonably may be, and while he [or she] is fulfilling his [or her] duties or engaged in doing something incidental thereto.

(internal citations and quotation marks omitted; alterations in original); *see also Goranson v. Dep't of Industry, Labor & Human Relations*, 94 Wis. 2d 537, 548, 289 N.W.2d 270, 276 (1980) ("The phrase . . . 'course of employment' refers to the time, place and circumstances of the accident in relation to the employment.").

Here, the alleged cause of injury is exposure to asbestos fibers. Plaintiffs assert in their opposition brief that the alleged "exposures occurred during plaintiff's activities outside the workplace" (Pls.' Opp'n (dkt. #85) 3), but the allegations in the complaint -- at least some of them -- directly contradict that assertion (*see, e.g.*, 1st Am. Compl. (dkt. #69) ¶ 14 ("Plaintiff inhaled airborne asbestos fibers released during operations at the Marshfield plant as a result of . . . his employment at the Marshfield in or around 1973.").) Although plaintiffs also allege that Boyer was exposed to asbestos through "asbestos fibers contaminating the home, auto, lunchroom and other locations," the facts as alleged lead to the inescapable conclusion that this exposure was due in substantial part to Boyer's actions at work (*e.g.*, cutting asbestos, cleaning up asbestos fibers, etc.), which he then transported in his hair, skin and clothing to other parts of the plant, areas immediately surrounding work, his car, home and other places where he regularly spent time.

The requirement that the injury must arise out of the employment is also easily met. To arise out of employment, the injury need not be "caused by the employment," although plaintiff's allegations arguably meet that higher burden. Rather, "an accident arises out of employment when by reason of employment the employee is present at a place where he is injured through the agency of a third person, an outside force, or the conditions of the location constituting a zone of special danger." *Cutler-Hammer, Inc. v. Indus. Comm'n*, 5 Wis. 2d 247, 254, 92 N.W.2d 824, 828 (1958); *see also Weiss*, 208 Wis. 2d at 107, 559 N.W.2d at 593 ("The 'arising out of' language of § 102.03(1)(e) refers to

8

the causal origin of an employee's injury.") (citing *Goranson*, 94 Wis. 2d at 549, 289 N.W.2d at 276). So, too, here.

Admittedly, sometimes the "arises out of" requirement may diverge from the "performing services" requirement. *See, e.g.*, *Goranson*, 94 Wis. 2d at 550, 56, 289 N.W.2d at 276-77, 79 (holding that driver was in course of employment at time of injury but the accident did not arise out of his employment because "the injuring force was purely personal to him"). Here, however, the injury -- exposure to asbestos fibers -- arose out of Boyer's employment because of certain "conditions of the location constituting a zone of special danger." As explained above, while exposure may have extended beyond the workplace due to fibers on clothing, in cars, at home and elsewhere, the injury still "arose out of his employment." Indeed, although not the focus of the parties, another provision of the Workers' Compensation Act expressly states as much: "Any accident or disease arising out of a hazard of such service shall be deemed to arise out of the employee's employment." Wis. Stat. § 102.03(1)(f); *see also Consol. Papers, Inc. v. Dep't of Indus., Labor & Human Relations*, 76 Wis. 2d 210, 223, 251 N.W.2d 69, 76 (1977) (recognizing that "occupational diseases" arise out of employment).

Still, to avoid this seemingly inevitable holding, plaintiffs attempt to draw an analogy to situations where an employee is injured while laundering his uniform at home or in an accident commuting from his home to his place of employment. (Pls.' Opp'n (dkt. #85) 11.) However, the injured individuals in those situations were not performing employment services by doing laundry at home or even driving to work. *See, e.g.*, *McRae v. Porta Painting, Inc.*, 2009 WI App 89, ¶ 9, 320 Wis. 2d 178, 769 N.W.2d 74 ("[T]he

9

typical employee going to or from work is not covered until he or she reaches the employer's premises. An employee going to work is ordinarily in the prosecution of his or her own business, not performing services incidental to employment.") (internal citations and quotation marks omitted); *Gibbs Steel Co. v. Indus. Comm'n*, 243 Wis. 375, 379, 10 N.W.2d 130, 131 (1943) (rejecting workers' compensation claim where injury was sustained slipping on a bath mat because sleeping and bathing are "requirements of ordinary life and not of any particular employment").

This court's finding that the alleged injury occurred while plaintiff was performing service of employment and arose out of that employment appears consistent with all case law examining this issue, at least as identified by the parties. For example, in *Silkwood v. Kerr-McFee Corp.*, 667 F.2d 908 (10th Cir. 1981), *rev'd on other grounds*, 464 U.S. 238 (1984), the Tenth Circuit reversed the district court's denial of defendant's motion for judgment notwithstanding the verdict, finding that Oklahoma's Workers' Compensation Act provided the exclusive remedy for injuries caused by exposure to radiation from plutonium found at plaintiff's apartment, where plaintiff was an employee of a nuclear fuel processing plant operated by defendants. In so holding, the court reviewed the evidence of plaintiff's exposure to plutonium and found that "all the plutonium found in her body came from her working with and around plutonium." *Id.* at 918. The fact that her apartment -- and in particular, her bathroom, kitchen and bedroom -- was contaminated, did not alter the court's finding that the injury occurred in the course of her employment, finding "a logical nexus between Silkwood's injury and her work." *Id.* at 919.

Similarly, in two state court cases involving tort claims premised on injury to employees caused by asbestos fibers remaining on clothing outside of the place of employment, courts rejected these claims as barred by workers' compensation laws. *See Acevedo v. Consolidated Edison Co. of N.Y.*, 189 A.D.2d 497, 499 (N.Y. App. Div. 1993) (affirming trial court's exclusion of tort claims premised on employee's exposure to asbestos fibers remaining on clothing after they had returned home because "any damage resulting from such harm will clearly have arisen out of plaintiffs' employment and is governed exclusively by the Workers' Compensation Law"); *Swanson v. Simpson Timer Co.*, No. B244266, 2013 WL 5469261, at *8 (Cal. Ct. App. Oct. 2, 2013) (unpublished) (finding so-called "secondary asbestos exposure" claim barred by the workers' compensation act because: (1) the injury "is derivative as it is depending upon the compensable injury arising from and in the course of and scope of Swanson's employment;" and (2) "Swanson's secondary self-exposure from the asbestos fibers and dust on his works clothes would not have occurred if he were not exposed to asbestos in the course and scope of his employment").

Plaintiffs' attempt to distinguish these cases is entirely unpersuasive. While different states' workers' compensation laws govern, the substantive provisions are similar to those in Wis. Stat. § 102.03, and similarly limit remedies to those available under the respective workers' compensation laws. *See, e.g., Silkwood*, 667 F.2d at 916 (describing "arising out of and in the court of employment" and "exclusive" liability provisions in Okla. Stat. Ann. tit. 85); *Acevedo*, 189 A.D.2d at 500 (describing Section 11 of New York's Wisconsin Compensation Law as providing the "sole and exclusive remedy [of]

any accidental injury arising out of and in the course of employment"); *Swanson*, 2013 WL 549261, at \*8 (describing California's workers compensation act as covering injuries "arising out of and in the course of the employment" and limiting recovery to that system).

Finally, plaintiffs persist in arguing that inhalation of fibers did not occur until "after fibers are transported off the premises . . . during non-employment activities such as laundering clothes, other household activities, in areas contaminated by asbestos fibers, or riding in the car." (Pls.' Opp'n (dkt. #10-11).) This theory of liability is implausible given plaintiffs' allegation that Milton Boyer was exposed to asbestos *during* his employment. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.").[4]

Because there is no way for plaintiffs to "unring" this bell by amendment, the court will grant Weyerhaeuser's motion to dismiss plaintiffs' causes of actions asserted against it, and will dismiss Weyerhaeuser from this action with prejudice. *See, e.g.*, *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) ("A plaintiff pleads himself out of court when it would be necessary to contradict the complaint in order to prevail

---

[4] To the extent plaintiffs rely on general allegations of asbestos exposure from landfills or in the air within the larger community -- in other words, exposure entirely unrelated to his employment -- plaintiffs' allegations do not meet the plausibility requirements of Rule 8. For example, the complaint contains no allegations that Boyer lived near the plant or its transportation routes, close to a landfill containing asbestos or ambient air with high asbestos content. Moreover, the theory that Milton Boyer's injury was caused by asbestos fibers entirely unrelated to his employment is not plausible, given plaintiffs' allegation that he was exposed to asbestos through and as a direct byproduct of his employment. *See Bell Atl.*, 550 U.S. at 555.

on the merits."); *Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007) ("A complaint can also allege too much; a plaintiff may unwittingly plead himself out of court by alleging facts that preclude recovery."); *see also Rohler v. TRW, Inc.*, 576 F.2d 1260, 1266 (7th Cir. 1978) (explaining that permission to amend may be refused if it is "apparent on the fact of [plaintiff's] initial complaint" that "plaintiff cannot state a claim upon which relief can be granted").

**II. Owens-Illinois' Motion to Dismiss**

Defendant Owens-Illinois moves to dismiss plaintiffs' claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). While plaintiffs generally allege product liability claims against Owens-Illinois sounding in negligence and strict liability (1st Am. Compl. (dkt. #69) Counts I and II), the foundation for both claims is Owens-Illinois' role as licensor of a fireproof door patent. (*Id.*) Consistent with governing case law, therefore, Owens-Illinois attached Patent No. 2,593,050 to its motion to dismiss, which claims a fireproof door or panel comprising, in part, "a core of inorganic, rigid, fire-proof, light weight material of a substantially uniform apparent density and consistency throughout . . . ." (O-I's Mot. to Dismiss, Ex. A (dkt. #86-1) 4:35-38.)[5] The patent claims do not require asbestos as the core, though asbestos is mentioned in the specification.

---

[5] "Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Menominee Indian Tribe of Wis. v. Thompson*, 161 F. 3d 449, 456 (7th Cir. 1998) (internal citation and quotation marks omitted). Here, plaintiffs refer to a patent and the patent is central to plaintiffs' product liability claims asserted against Owens-Illinois.

### A. Negligence

A negligence products liability claim requires proof of four elements: "(1) a duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury." *Green v. Smith & Nephew AHP, Inc.*, 2001 WI 109, ¶ 55, 245 Wis. 2d 772, 629 N.W.2d 727 (quoting *Morden v. Cont'l AG*, 2000 WI 51, ¶ 45, 235 Wis. 2d 325, 611 N.W.2d 659)). The first element is "the obligation of due care to refrain from any act which will cause foreseeable harm to others." *Id.* Whether there is a duty of care is a question of law for the court. *Strasser v. Transtech Mobile Fleet Serv., Inc.*, 236 Wis.2d 435, 459, 613 N.W.2d 142, 154 (2000) ("[T]he existence of a duty presents a question of law."). Accordingly, plaintiffs' negligence claim turns on whether the licensing of a patent which claims a fireproof door and specifies use of asbestos at its core "foreseeably creates an unreasonable risk to others." *Bittner v. Am. Honda Motor Co., Inc.*, 194 Wis. 2d 122, 148, 533 N.W.2d 476, 486. As a matter of law, the court concludes that plaintiffs cannot state a negligence claim based only on a party's licensing of a technology, even if used by the licensee to create a product containing asbestos.

This conclusion is consistent with a line of cases rejecting similar product liability claims premised on the licensing of a patent alone. *See, e.g.*, *In re Celotex Corp.*, 487 F.3d 1320, 1338 (11th Cir. 2007) (rejecting products liability claim based on defendant being nothing "more than a mere licensor" of a patent concerning "a variety of formulation of insulation, some that do not contain asbestos and some that do"); *Smith v. Wyeth, Inc.*, 657 F.3d 420, 424 (6th Cir. 2011) (holding, consistent with its view of the majority of

courts addressing this issue, that "manufacturer of a name-brand drug has no duty to patients who ingested only a generic version of the drug manufactured by the name-brand drug company's competitors").

In response, plaintiffs cite to *Dolin v. SmithKline Beecham Corp.*, No. 12 C 6403, 2014 WL 804458, at *5 (N.D. Ill. Feb. 28, 2014), for support. While the district court rejected the majority review in that case, denying summary judgment to defendant despite being the licensor of a patent, it did so based on the defendant's role in drafting the design and language of the warning label. As such, the defendant's conduct extended beyond mere licensing of a patent. Plaintiffs would also make much of the fact that Wisconsin courts adopted the minority opinion in *Palsgraf v. Long Island R.R. Co.*, 162 N.E. 99, 103 (N.Y. 1928), including that "[e]veryone owes to the world at large the duty of refraining from those acts that may unreasonably threaten the safety of others." *Hornback v. Archdiocese of Milwaukee*, 2008 WI 98, ¶ 22, 313 Wis. 2d 294, 752 N.W.2d 862. In contrast, the majority view limited the duty to the "particular victim," whose risk is foreseeable. *Id.* Whatever the import of that distinction generally, however, it is immaterial to plaintiffs' claim here. Whether owed to others at large or particular victims, the duty still turns on the foreseeability of risk, and courts have repeatedly dismissed negligence claims because the injury was not foreseeable to a defendant who played no role in the manufacturing, marketing or use of the product. *See, e.g., Geboy v. TRL, Inc.*, 159 F.3d 993, 1000 (7th Cir. 1998) (rejecting negligence claim brought under Wisconsin law against a "party who is in the chain of distribution, but have never assembled, inspected nor used the product"); *Rolph v. EBI Cos.*, 159 Wis. 2d 518, 536-

37464 N.W.2d 667, 674 (rejecting negligence claim against reconditioner for failing to correct design defects created by manufacturers); *Pelnar v. Rosen Sys., Inc.*, 964 F. Supp. 1277, 1284 (E.D. Wis. 1997) (rejecting negligence claim on public policy grounds asserted against an auction company).

### B. Strict Liability

Plaintiffs' strict liability claim against Owens-Illinois is similarly flawed. To impose strict liability under Wisconsin law, the defendant must be "engaged in the business" of selling the alleged defective product. *Geboy v. TRL, Inc.*, 159 F.3d 993, 999 (7th Cir. 1998); *see also St. Clare Hosp. of Monroe, Wis. v. Schmidt, Garden, Erickson, Inc.*, 148 Wis. 2d 750, 757, 437 N.W.2d 228, 231 (Ct. App. 1989) (strict liability "is imposed only on manufacturers, distributors and sellers -- those who place or maintain the product in the stream of commerce"). In *Geboy*, the Seventh Circuit rejected a strict liability claim against the broker of used products, explaining that "[t]he application of strict liability in tort is premised on certain public policy considerations which assumes that the manufacturer/seller is in the paramount position to distribute the costs of the risks created by the defective product he is selling." *Id.*; *see also Green v. Smith & Nephew AHP, Inc.*, 2001 WI 109, ¶ 56, 245 Wis. 2d 772, 629 N.W.2d 727 (the focus of a strict liability claim, in contrast to a negligence claim, is "not on the defendant's conduct, but on the nature of the defendant's product").

As alleged, Owens-Illinois is not a "seller" and there is no "product" sold by Owens-Illinois. While plaintiffs also allege that Owens-Illinois "manufactured, sold, and

designed asbestos products, including without limitation fire door cores," referred to by the brand name "Kaylo" (1st Am. Compl. (dkt. #69) ¶ 6), plaintiffs fail to allege that Boyer's former employer purchased or otherwise used Owens-Illinois' Kaylo door cores in manufacturing its fireproof doors. Absent such an allegation,[6] plaintiffs do not state a viable strict liability claim premised on the manufacturing and selling of Kaylo door cores against Owens-Illinois under Wisconsin law. However, on the unlikely chance plaintiffs can allege that Owens-Illinois sold Kaylo door cores to Boyer's former employer for use during his employ, the court will grant plaintiffs 30 days to file an amended complaint.

## ORDER

IT IS ORDERED that:

1) defendant Weyerhaeuser Company's motion to dismiss (dkt. #8) is GRANTED. Count III and IV of plaintiffs' first amended complaint are dismissed with prejudice and defendant Weyerhaeuser is dismissed from this action;

2) defendant Owens-Illinois Inc.'s motion to dismiss (dkt. #86) is GRANTED. Counts I and II of plaintiffs' first amended complaint premised on Owens-Illinois's role as a licensor are dismissed with prejudice;

3) plaintiff may have until September 22, 2014, to file an amended complaint alleging specific facts necessary to state a claim for strict liability against Owens-Illinois, provided they can do so in good faith; and

---

[6] While outside the purview of a motion to dismiss, Owens-Illinois represents that it was out of the business of manufacturing door cores more than a decade before Boyer's exposure to asbestos alleged in this action. (Owens-Illinois's Reply (dkt. #93) 2.) As a result, it appears that plaintiffs cannot in good faith make such an allegation.

4) defendant Owens-Illinois's motion for relief under Wis. Stat. § 802.025 (dkt. #52) is DENIED AS MOOT.

Entered this 22nd day of August, 2014.

                            BY THE COURT:

                            /s/

                            _____
                            WILLIAM M. CONLEY
                            District Judge

Case: 3:14-cv-00286-wmc   Document #: 94   Filed: 08/22/14   Page 18 of 18