IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Milton Boyer and Kathy Boyer, )<br>)<br>    Plaintiffs, )<br>)<br>v. )<br>)<br>Weyerhaeuser Company, et al., )<br>)<br>    Defendants. ) | Case No. 3:14-cv-00286-wmc |

**OWENS-ILLINOIS, INC.'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION TO RECONSIDER**

Owens-Illinois, Inc. ("Owens-Illinois") submits this Response in Opposition to Plaintiffs' Motion to Reconsider this Court's Order on Plaintiffs' Motion for Reconsideration, Dated 11/4/14 Dismissing Owens-Illinois (ECF No. 117).

## INTRODUCTION

Contrary to Plaintiffs' two motions to reconsider, this Court did not commit a manifest error in dismissing Owens-Illinois. Once again, Plaintiffs misunderstand or misuse the motion to reconsider. Nevertheless, this second motion to reconsider, like the first, must fail as to the Plaintiffs' claims against Owens-Illinois.

This is a product liability case. But Plaintiffs have not and cannot allege that he ever used the product at issue, Owens-Illinois Kaylo. Nor can Plaintiffs allege that he was ever present while anyone else used Owens-Illinois Kaylo. Instead, Plaintiffs' newest theory is, in a nutshell, that (a) Owens-Illinois Kaylo (pre-April 30, 1958 Kaylo) was actually used at the Marshfield plant; (b) his parents were actually in close proximity on a regular basis to Owens-Illinois Kaylo use; (c) significant quantities of

asbestos from Owens-Illinois Kaylo adhered to his parent's clothing; (d) these fibers traveled many miles away from the alleged point of use; (e) once in his vicinity those fibers that were so strongly bonded to the clothing to make the journey home were then released in his presence in significant quantities on a regular basis such that it could cause mesothelioma (and that his alleged injury was not caused by any of his direct occupational exposure to asbestos years later); and (f) Owens-Illinois knew by April 30, 1958, that such household exposure was possible *and* could cause harm. Not one of those component elements is true, and more importantly for the motion before the Court, none of them could ever be pled with plausible allegations.

In fact, there is no well-pled allegation anywhere in the Plaintiffs' Second Amended Complaint that anyone recognized in the 1940s and 1950s that household members, removed from actual use of products, were at risk of developing disease, and courts in Wisconsin and across the country have so held. Imposing any liability on Owens-Illinois with respect to Plaintiffs would run counter to the long-established jurisprudence in this state. It also would run afoul of sound public policy because Owens-Illinois had no ability to control the circumstances of the alleged household exposure and the liability imposed would be subject to no limiting principle.

Plaintiff was not a user of the product, was not a bystander to the use of the product, and putting aside for the moment that there is no factual basis for the claim that the product was used by anyone Plaintiffs have ever known, the alleged injury from the residue of the product was not foreseeable or known when it was manufactured and sold in the 1940s and 1950s by Owens-Illinois. For these reasons,

Plaintiffs' motion to reconsider should be denied or, in the alternative, granted in order to clarify the Court's dismissal of Owens-Illinois with prejudice.

## ARGUMENT

### I. There Is No Basis to Reconsider this Court's Order.

Plaintiffs misapprehend the purpose of a motion to reconsider. Though they ask this Court to correct what they claim was a manifest error of law, in reality, Plaintiffs only raise arguments they could have raised in their previous motion but did not. For the first time, Plaintiffs argue that this Court should allow them to plead an implausible theory based on his alleged exposure to residual dust from Owens-Illinois Kaylo brought home on his parent's work clothes. (Pls.' Mot. Recons. Order Recons. at p. 2.) Plaintiffs' argument is not a proper basis for reconsideration:

> It is not the purpose of allowing motions for reconsideration to enable a party to complete presenting his case after the court has ruled against him. Were such a procedure to be countenanced, some lawsuits really might never end, rather than just seeming endless.

*Frietsch v. Refco, Inc.*, 56 F.3d 825, 828 (7th Cir. 1995). Because Plaintiffs do not raise a proper basis for reconsideration, their motion should be denied. *See Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) (rejecting presenting new arguments as basis for motion to reconsider).

### II. Plaintiffs' New Arguments Do Not, and Cannot, Support Reconsideration.

Even if Plaintiffs could provide a proper basis for their motion, nothing they cite justifies reconsideration. First, Plaintiffs completely misrepresent the Department of Labor's 1951 *Safety and Health Standards* to state "[i]t was foreseeable in the 1950s that household exposures caused mesothelioma." (*Compare* Pls.' Mot. Recons. Order Recons.

at p. 3 *with* Department of Labor, *Safety and Health Standards*, p. 22-23, attached as Ex. A.)[1]  There is absolutely no reference to asbestos' ability to cause disease in household members, and no reference to asbestos causing mesothelioma at all.  In fact, the *Safety and Health Standards* states that the allowable concentration of asbestos for "employees" is 5 million particles per cubic foot of air — an allowable level of asbestos millions more than any concentration of residual asbestos allegedly brought home on work clothes. (*See id.* at 1, 21-22.)  This Court should not countenance such brazen misrepresentations. Fed. R. Civ. P. 11(b); *Jimenez v. Madison Area Technical Coll.*, 321 F.3d 652, 657 (7th Cir. 2003) ("it is proper for the trial court to impose a severe sanction where the sanction is sufficient to deter repetition of the misconduct").

Indeed, a Wisconsin court and two federal courts have rejected Plaintiff's assertion.  *Bootenhoff v. Hormel Foods Corp.*, No. CIV-11-1368-D, 2014 WL 3744011, at *11 (W.D. Okla. July 30, 2014); *Hoyt v. Lockheed Shipbuilding Co.*, No. C12–1648 TSZ, 2013 WL 3270371, at *7 (W.D. Wash. June 26, 2013); Hr'g Tr. 71–73, *Wilkoski v. Bldg. Serv. Indus. Sales Co.*, No. 06-CV-5841 (Wis. Cir. Ct. Sept. 7, 2011).  As *Bootenhoff* explained, the Walsh-Healy Public Contracts Act and the *Safety and Health Standards* "addressed workplace safety and mandated that workers not be exposed to concentrations of atmospheric contaminants hazardous to health." *Bootenhoff*, 2014 WL 3744011, at *11.

---

[1] Exhibits, like the *Safety and Health Standards*, "are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Menominee Indian Tribe of Wis. v. Thompson*, 161 F. 3d 449, 456 (7th Cir. 1998) (internal citation and quotation marks omitted).  Alternatively, since Plaintiffs have previously presented material outside the pleadings, the Court may exercise discretion to convert the motion under review into a motion for summary judgment.  (Br. Opp'n 2, nn.1-2, ECF No. 103.)

They do not constitute notice to an employer — much less a product manufacturer, like Owens-Illinois — of the hazards of nonoccupational exposure to asbestos. *Id.* More significantly, they do not support any determination that the risk of harm to a household member was foreseeable to an employer, let alone a product manufacturer, like Owens-Illinois. *Id.* And the Plaintiffs' own allegations state that it was not until the 1960s — years after Owens-Illinois exited the Kaylo business — the very first, "landmark" studies on the risk to household members appeared in the medical field. (Pls.' Second Amend. Compl. at ¶¶45-61.)

Second, the law that Plaintiffs cite does not justify reconsideration. Once again, the only case Plaintiffs cite, *Tragarz v. Keene,* is not controlling. (Pls.' Mot. Recons. Order Recons. at p. 3.) *Tragarz* applied decades-old Illinois law, and not Wisconsin law, which governs the Plaintiffs' claims in this case. *See* 980 F.2d 411, 421 (7th Cir. 1992) (applying Illinois law); *see also Land v. Yamaha Motor Corp.*, 272 F.3d 514, 516 (7th Cir. 2001) ("A federal court sitting in diversity jurisdiction must apply the substantive law of the state in which it sits.").

*Tragarz* is not even good law in Illinois. Though Plaintiffs cite this case to argue that *de minimus* exposure is sufficient, the Illinois Supreme Court later made clear that the causation standard in asbestos cases is frequent, regular, and proximate exposure and not merely *de minimus* exposure. *Nolan v. Weil-McLain*, 233 Ill. 2d 416, 432, 910 N.E.2d 549, 558 (Ill. 2009) ("'[F]requency, regularity and proximity' test [is the] means by which an asbestos plaintiff can prove more than minimum contact to establish that a specific defendant's product was a substantial factor in being a cause in fact of a

plaintiff's injury."); *id.* at 439, 910 N.E.2d at 562 ("[The Court] rejected the argument ... that so long as there is *any* evidence that the injured worker was exposed to a defendant's asbestos-containing product, there is sufficient evidence of cause in fact to allow the issue of legal causation to go to the jury."). Plaintiffs cannot use a case applying a different state's law, which does not even accurately reflect the law of that state, to establish manifest error. *See Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (manifest error is a failure to recognize "*controlling* precedent" (emphasis added)). Because no manifest error exists, Plaintiffs' motion should be denied.

### III. Plaintiffs' Household Theory Is Not Plausible.

Not only is there no basis for reconsideration, Plaintiffs' allegations are not plausible. Plaintiffs argue that they should be allowed to plead product liability claims based — not on his use of Owens-Illinois Kaylo — but on the residue of Owens-Illinois Kaylo allegedly brought home on the clothing of his parents from work. (Pls.' Mot. Recons. Order Recons. at p. 2-3.) But, as is explained below, Plaintiffs' Second Amended Complaint is devoid of allegations to support this household theory.

Under the federal pleading standards, "a district court must retain power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Indeed, "it is only by taking care to require allegations reach the level suggesting [defendant's liability] that we can hope to avoid the potentially enormous expense of discovery in cases with no 'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support [plaintiff's] claim." *Id.* at 559-60 (quoting *Dura Pharms., Inc. v.*

*Broudo*, 544 U.S. 336, 347 (2005)).

      **A.**     **Plaintiffs' Negligence Claim Fails as a Matter of Law.**

For a negligence claim under Wisconsin law, Plaintiffs must show "(1) the existence of a duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) damages resulted from that injury." *Geboy v. TRL, Inc.*, 159 F.3d 993, 1000 (7th Cir. 1998). Whether a duty exists, as a legal issue exclusively for the court, "is premised on the foreseeability of an unreasonable risk of harm, which is determined by an objective standard examining what a reasonable person of ordinary prudence could foresee under the same or similar circumstances." *Id.*

Plaintiffs' Second Amended Complaint contains no allegations showing that any harm to him from household asbestos exposure was foreseeable when Owens-Illinois made and sold Kaylo in the 1940s and 1950s. Indeed, when Owens-Illinois sold its Kaylo business in 1958, there was not even a suggested connection, much less an established relationship, between asbestos-related disease and remote, derivative asbestos exposure. (Pls.' Second Amend. Compl. at ¶¶ 45-61.) As Plaintiffs admit, the 1960 article by Dr. J.C. Wagner in the *British Journal of Industrial Medicine* was a "landmark" study — the first study to suggest any risk of harm from household or environmental asbestos exposure. (*Id.* at ¶47.) Because this "landmark" study was more than two years after Owens-Illinois ceased the manufacture and sale of Kaylo, Plaintiffs' own admissions show that any risk of harm to him was not foreseeable. (*Id.*)

In fact, a Wisconsin trial court granted Owens-Illinois judgment as a matter of

law on this issue (in a case litigated by the same law firm representing the Plaintiffs) because the risk of harm was not foreseeable:

> The Court, based on extensive briefing and argument of the parties, has previously made findings of fact and determined that during the time Owens-Illinois manufactured and sold Kaylo, that Owens-Illinois neither knew, nor should it have known that Kaylo would be harmful to the household members of persons who used Kaylo, and as such all of Plaintiffs' negligence claims, and their strict liability failure to warn claim were dismissed with prejudice . . . .

*Wilkoski v. Bldg. Serv. Indus. Sales Co.*, No. 06-CV-5841, 2012 WL 11860493, at *1 (Wis. Cir. Ct. Jan. 18, 2012), attached as Ex. B; *see also* Hr'g Tr. 71–73, *Wilkoski v. Bldg. Serv. Indus. Sales Co.*, No. 06-CV-5841 (Wis. Cir. Ct. Sept. 7, 2011).

This Wisconsin trial court finding is not unique. Courts across the country, applying a duty analysis indistinguishable from that applied in Wisconsin, have repeatedly found that the risk of harm to people with only derivative exposure was neither known nor reasonably foreseeable in the 1950s, as a matter of law:

- *In re Certified Question from Fourteenth Dist. Ct. of Appeals of Tex.*, 740 N.W.2d 206 (Mich. 2007) (exposures between 1954 and 1965; "the risk of take home asbestos exposure was, in all likelihood, not foreseeable");

- *Alcoa, Inc. v. Behringer*, 235 S.W.3d 456 (Tex. App. Ct. 2007) (exposures between 1953 and 1955 and between 1957 and 1959; "the danger of non-occupational exposure to asbestos dust on workers' clothes was neither known nor reasonably foreseeable");

- *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439 (6th Cir. 2009) (exposures between 1951 and 1963; danger of bystander exposure was not foreseeable based on "common knowledge at the time and in the community");

- *Holmes v. Pneumo Abex LLC*, 955 N.E.2d 1173 (Ill. App. Ct. 2011) (exposures between 1962 and 1963; no duty to spouse of worker (1) because the risk of harm from take-home exposures was not foreseeable when the plaintiff was exposed and (2) because of the lack of relationship between defendant and plaintiff);

- *Hoyt v. Lockheed Shipbuilding Co.*, 2013 WL 3270371 (W.D. Wash. June 26, 2013), *aff'd*, 540 Fed. App'x 590 (9th Cir. Sept. 10, 2013) (exposures between 1948 and 1958; risk not foreseeable during the relevant time period; plaintiff failed to offer evidence that the risk of take-home exposure was either known or knowable in light of the "common knowledge at the time and in the community");

- *Bootenhoff v. Hormel Foods Corp.*, CIV–11–1368–D, 2014 WL 3744011 (W.D. Okla. July 30, 2014) (exposures pre 1959; "[t]he fact of these first reports—*in the medical field*—which began to link the possibility of asbestos-related diseases to household members of workers does not demonstrate the risk of that disease should have been known in the industry by manufacturing companies").

Many courts have also gone on to find that the relationship between occupational exposure at the worksite and harm from derivative household asbestos exposure is too remote to justify the extension of a legal duty, even for exposures well after the 1950s:

- *Georgia Pacific v. Farrar*, 432 Md. 523, 69 A.3d 1028 (Md. 2013) (exposures between 1968 and 1969; product manufacturer owed no duty; exposures post-dated 1965 Newhouse study, but pre-dated 1972 OSHA regulations; even if risk was foreseeable after 1965, there was no practical way the manufacturer could have directly warned individuals with whom they had no relationship);

- *Rohrbaugh v. Owens-Corning Fiberglass Corp.*, 965 F.2d 844 (10th Cir. 1992) (pre-1969 exposure; plaintiff was not a "foreseeable user or purchaser" of the defendant's product);

- *CSX Transp., Inc. v. Williams*, 608 S.E.2d 208 (Ga. 2005) (exposures between 1958 and 1996; employers owe no duty to non-employees);

- *In re New York City Asbestos Litig. (Holdampf v. A.C. & S., Inc.)*, 840 N.E.2d 115 (N.Y. 2005) (exposures between 1971 and 1996; employers owe no duty to non-employees);

- *Brewster v. Colgate-Palmolive Co., et al.*, 279 S.W.3d 142 (Ky. 2009) (exposures between 1966 and the 1970s; no duty by premises owner absent actual knowledge of specific hazards);

- *Riedel v. ICI Americas Inc.*, 968 A.2d 17 (Del. 2009) (exposures between 1962 and 1990; premises owner and manufacturer owed no duty based on lack of relationship with spouse of worker);

- *Nelson v. Aurora Equip. Co.*, 391 Ill. App. 3d 1036 (Ill. App. Ct. 2009) (exposures between 1968 and 1993; premises owner owed no duty based on lack of relationship with spouse and mother of workers);

- *Van Fossen v. MidAmerican Energy Co., et al.*, 777 N.W.2d 689 (Iowa 2009) (exposures between 1973 and 1997; premises owner owed no duty to spouse of employee subcontractor);

- *Price v. E.I. duPont de Nemours & Co.*, 26 A.3d 162 (Del. 2011) (exposures between 1957 and 1991; following 2009 decision in *Riedel*, employer owned no duty based on lack of relationship with employee's spouse);

- *Carel v. Fibreboard Corp.*, No. 94–5222, 1996 WL 3917 (10th Cir. Jan. 4, 1996) (exposures between 1950 and 1977; "manufacturer has no duty to warn when the injured party 'was never exposed to asbestos as a user or present where the product was used'").

As noted above, the Western District of Washington decided this very issue in *Hoyt v. Lockheed Martin Corp.*, No. C12-1648, 2013 WL 3270371 (W.D. Wash. June 26, 2013). The *Hoyt* court concluded, as a matter of law, that it was not foreseeable during the 1950s that household members could be injured as a result of "take home" asbestos exposure. *Id.* at *6. The court "conducted an independent review of the case law, and found no case in which a court has concluded that the risk of 'take home' exposure was foreseeable in the 1950s." *Id.* The court's opinion in *Hoyt* was affirmed by the Ninth Circuit, which held that "no reasonable factfinder could conclude that harm from take-home exposure to asbestos should have been foreseeable to [the defendant] by 1958." *Hoyt v. Lockheed Martin Corp.*, 540 Fed. App'x 590, 592 (9th Cir. 2013).

Likewise, here, after several rounds of amended complaints and extensive briefing in multiple cases, there are still no allegations anywhere in the record showing

that, in the 1940s and 1950s, Owens-Illinois could be liable to persons in the position of Plaintiff — individuals who never used Owens-Illinois Kaylo, never were present during the use of the product by another, and claim injury only from exposure to the residue of the product that was carried miles away from the point of use by another.

Moreover, Plaintiffs do not allege the dates that his parents worked at the plant or their responsibilities in the 1940s and 1950s. Nor do Plaintiffs allege what products his parents worked with or around in the 1940s and 1950s. Most importantly, Plaintiffs do not allege his parents ever worked with or around Owens-Illinois Kaylo. Although this Court must accept well-pled facts, Plaintiffs cannot make factual contentions without any evidentiary support of "household" exposure to Owens-Illinois Kaylo; they are obligated to have a factual basis for their allegations. Fed. R. Civ. P. 11(b); *Twombly*, 550 U.S. at 559.[2] Plaintiffs cannot state a negligence claim as a matter of law.

### B. Plaintiffs' Strict Liability Claim Fails as a Matter of Law.

Plaintiffs' strict liability claim also fails as a matter of law. Under Wisconsin law, Plaintiffs must show that (1) the product was in defective condition when it left the possession or control of the seller; (2) *that it was unreasonably dangerous to the user or consumer*; (3) the defect was a cause of the plaintiff's injuries or damages; (4) that the seller engaged in the business of selling such product, or, put negatively, that this is not an isolated or infrequent transaction not related to the principal business of the seller;

---

[2] Indeed, after decades of discovery related to this plant, Plaintiffs have no evidence showing that Owens-Illinois Kaylo was ever present at the plant. Although this Court must accept well-pled facts as true at this stage, Owens-Illinois disputes any allegation that anyone was ever exposed to Owens-Illinois Kaylo at the plant.

- 11 -

and (5) that the product was one which the seller expected to and did reach the user or consumer without substantial change in the condition it was when he sold it. *Sub-Zero, Inc. v. Gen. Elec. Co.*, No. 09-cv-00497, 2010 WL 3584427, at *3–4 (W.D. Wis. Sept. 10, 2010) (citing *Haase v. Badger Mining Corp.*, 274 Wis. 2d 143, 682 N.W.2d 389 (Wis. 2004)).

Plaintiffs' Second Amended Complaint does not, and cannot in good faith, state that he was ever a "user" or "consumer" of Owens-Illinois Kaylo. (Pls.' Second Amend. Compl. ¶¶ 88-98; *see also* Pls.' Mot. Recons. Order Recons. at p. 2 (Plaintiff "does not contend or attempt to allege work exposures as the basis for his claim against Owens-Illinois.").) Plaintiffs' strict liability claim fails as a matter of law. *See R.J.R. Servs., Inc. v. Aetna Cas. & Sur. Co.*, 895 F.2d 279, 281 (7th Cir. 1989) (requiring dismissal of complaint that failed to allege essential element of the claim). Indeed, Plaintiffs have cited no case, and we can find none, imposing liability under these circumstances. To do so here would directly contradict Wisconsin law. *Horst v. Deere & Co.*, 769 N.W.2d 536, 543, 551 (Wis. 2009) ("strict liability . . . is not absolute liability. We do not want to hold manufacturers liable for every injury involving their products.").

No Wisconsin court has ever held a company liable for an unforeseeable risk to someone who, like Plaintiffs, claim exposure not to the use of the product in the workplace, but rather to the residue of that product carried miles away from the point of use. Imposing strict liability on Owens-Illinois from household asbestos exposure would create absolute liability, contrary to Wisconsin law. *Horst*, 769 N.W.2d at 543, 551. Owens-Illinois had no ability to control the circumstances of the remote exposure alleged; the liability imposed would be subject to no meaningful limiting principle. *See*

*id*. If held liable for injuries stemming from any remote, derivative exposure, Owens-Illinois would be charged to prevent injuries that it could not have foreseen when it produced these products in the 1950s. And the potential class of plaintiffs would be limitless. *See id.* Workers have an extraordinary array of personal contacts before ever reaching their homes after leaving the workplace. Car poolers, bus drivers, laundry owners and employees, bartenders and neighbors would be among the limitless and unknowable class to which the asbestos-laden clothes of an occupationally exposed worker would come into contact.

This limitless and uncertain scope of liability — which Plaintiffs advocate in their motion to reconsider — has caused courts to refuse to impose strict liability as a matter of law, rather than start a process of endless litigation about where the line ultimately should be drawn. *See, e.g.*, *In re Certified Question*, 740 N.W.2d at 220 (noting a "potentially limitless pool of plaintiffs"); *CSX Transp.*, 608 S.E.2d at 209 (imposition of duty may "create an almost infinite universe of potential plaintiffs"); *Van Fossen*, 777 N.W.2d at 697 (noting "the universe of potential persons to whom the duty might be owed is unlimited"). All of these courts were troubled by the specter of unlimited liability, for if there were a legal liability running to household members, why not random car poolers, others riding the same bus every day, or those who frequent the same diner or tavern? *See, e.g., Farrar*, 69 A.3d at 1036 n.2. The same rationale applies here under Wisconsin law — imposing liability on Owens-Illinois would violate Wisconsin law and create absolute liability. *See Horst*, 769 N.W.2d at 543, 551.

## **CONCLUSION**

For these reasons, Owens-Illinois, Inc. requests that this Court deny Plaintiffs' Motion to Reconsider Order Dated 11/4/14 Dismissing Owens-Illinois (ECF No. 117) or, in the alternative, grant Plaintiffs' motion in order to clarify the dismissal of Plaintiffs' Second Amended Complaint and Owens-Illinois, Inc. with prejudice.

Dated:  December 4, 2014                    Respectfully submitted,

By: /s/Brian O. Watson
Edward Casmere
Brian O. Watson
Rachel A. Remke
Schiff Hardin LLP
233 S. Wacker Dr. Suite 6600
Chicago, Illinois  60606
(312) 258-5500
(312) 258-5600 (facsimile)
*Attorneys for Defendant*
*Owens-Illinois, Inc.*

## CERTIFICATE OF SERVICE

    I certify that on December 4, 2014, these papers were filed with the Clerk of the Court for the United States District Court for the Western District of Wisconsin using the CM/ECF system, which will send notification of such filing upon all parties who have appeared.

                                        /s/ Brian O. Watson
                                        Brian O. Watson