IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

KATHY BOYER, *individually and as Special Administrator of the Estate of Milton Boyer*,

      Plaintiff,

 v.

WEYERHAEUSER COMPANY,

      Defendant.

OPINION AND ORDER

14-cv-286-wmc

---

  The second of three related asbestos cases is set for trial March 14, 2016. In advance of the final pretrial conference on May 4, 2016, the court issues the following rulings on the parties' respective motions *in limine* (dkt. ##497, 504, 506) and defendant's motion to supplement expert reports (dkt. #510).

OPINION

I. **Plaintiff's Motions *in Limine***

  Prior to the deadline for filing motions in limine, the court advised the parties that it would adopt the rulings in a related case, *Pecher v. Weyerhaeuser Company*. No. 14-cv-147, and that the parties need not and should not file duplicative motions. (4/7/15 Order (dkt. #488).) As such, plaintiff's motions *in limine* filed in the Pecher case and the court's rulings on those motions apply with equal force in this case, and plaintiff has preserved her arguments made in support of those motions for purposes of any appeal.

  In addition to the motions filed in the *Pecher* action, plaintiff filed three motions *in limine* specific to Boyer's claims. *First*, plaintiff seeks an order excluding evidence or argument that plaintiff Kathy Boyer has received, has been entitled to receive, or has

applied for disability benefits. Plaintiff argues that this evidence is not material to any issue of liability, and that it is also immaterial to damages because of the collateral source rule. (Pl.'s Mot. (dkt. #506) 2.) Defendant opposes the motion, arguing that the evidence is material to damages because it will correct any jury inference that Kathy Boyer "either could not work due to her husband's illness, or was previously a homemaker by choice such that she brought no income into the home." (Def.'s Opp'n (dkt. #533) 2.) Defendant further argues that the evidence is not barred by the collateral source rule.

The court agrees with defendants that the collateral source rule does not apply. If nothing else, both sides agree that Kathy Boyer's disability income is <u>not</u> income from injuries caused by Weyerhaeuser. *See Larson v. Wisconsin Cent. Ltd.*, No. 10-C-446, 2012 WL 359672, at *1 (E.D. Wis. Feb. 2, 2012) ("[T]he collateral source rule generally only precludes reducing an award for damages by amounts the plaintiff recovers for the *same losses* from so-called collateral sources." (emphasis added)).

The question remains, however, whether this fact is relevant to the jury's damages determination. Consistent with Wisconsin's standard instruction for recovery for loss of society and companionship, the jury will be instructed that:

> Society and companionship includes the love, affection, care, and protection Kathy Boyer would have received from Milton Boyer had he continued to live. It *does not include the loss of monetary support* or the grief and mental suffering caused by the spouse's death.

Wis. Jury Instructions -- Civil § 1870 (emphasis added). Because the jury will not be considering the degree to which Kathy Boyer relied on her husband's income, evidence of

2

her own income from disability payments is not relevant, or at most marginally so, with the risk of confusion outweighing any probative value. Accordingly, this motion is GRANTED.

*Second*, plaintiff seeks an order excluding any comment, argument or evidence that any of plaintiff's witnesses, including Charles Reno, filed any past grievances or workers' compensation claims against Weyerhaeuser. Plaintiff contends that this evidence is not relevant, and in anticipation of defendant's opposition, further argues that any relevance is outweighed by the risk of confusion and waste of time. (Pl.'s Mot. (dkt. #506) 2-3.) For its part, defendant responds that this evidence is highly relevant to each witness's credibility and bias.

Certainly, bias evidence is generally relevant to a jury's assessment of a witness's credibility, and despite plaintiff's simple response that "the character of Plaintiff's witnesses is not at issue," a witness's credibility is generally at issue for any jury determination. Still, the court recognizes that at times so-called bias evidence may be more prejudicial than probative, cause significant confusion, or give rise to a side trial. The court, however, cannot weigh the probative value against any prejudicial effect without greater context. Instead, plaintiff will need to point to specific evidence or argument with respect to individual witnesses. As such, this motion is DENIED without prejudice to plaintiff sharpening its objections.

*Third*, in a separately-filed motion styled "motion *in limine*," plaintiff seeks reconsideration of the court's June 2, 2015, opinion and order preventing plaintiff from relying on Environmental Protection Agency regulations in establishing the standard of

3

care. (Pl.'s Mot. (dkt. #504).) In that order, the court granted defendant's motion to dismiss plaintiffs' nuisance claims on the basis that the Clean Air Act preempts state law nuisance claims, at least "to the extent that plaintiffs intend to rely on NESHAP [National Emission Standards for Hazardous Air Pollutants] or other regulatory standards under the CAA to prove negligent conduct under either a private or public nuisance claim." (6/2/15 Op. & Order (dkt. #174) 5.) Plaintiffs previously moved for reconsideration of that decision, which the court also denied. (7/21/15 Op. & Order (dkt. #201).)

Now, with the benefit of recently-acquired evidence that Weyerhaeuser was aware of the NESHAP standards at the time of the alleged asbestos emissions, plaintiff essentially seeks reconsideration once again in the guise of a motion *in limine*. Critically, the court's original decision was *not* based on a lack of evidence that Weyerhaeuser was aware of these standards or relied on them in setting plant quality control metrics; the court limited the scope of plaintiffs' state law claims in order to avoid encroaching on the CAA federal regulatory scheme. Plaintiff offers no basis to upset that legal determination, and the court sees no independent basis for doing so. Accordingly, the motion is DENIED.

## II. Defendants' Motions *In Limine*

Despite the court's instruction not to re-file the same motions *in limine*, defendant did just that, albeit in an abundance of caution to ensure that its arguments were preserved. More appropriately, defendant identifies a few, specific nuances by which it

4

seeks to differentiate this court's rulings in *Pecher* (Dkt. #497). Some of defendant's motions also concern evidentiary challenges not resolved fully in *Pecher*. The court gives further consideration to some of these motions below, while finding the others not worth additional discussion.[1]

### A. No. 2: 1975 D.B. Allen Document

As an initial matter, defendant renews its motion to exclude the 1975 report of D.B. Allen. (Dkt. #498 at 5-17.) In *Pecher*, the court rejected defendant's overarching hearsay exception, finding that the document was a statement of a party opponent, and therefore not subject to a general hearsay objection under Federal Rule of Evidence 801(d)(2). (3/7/16 *Pecher* Hr'g Tr. (dkt. #523) p.6.) The court, however, reserved on the issue of authenticity and further, more specific hearsay objections pending additional briefing.

Now, with the benefit of additional briefing on this subject here (as well as in *Pecher* -- the briefs were filed prior to settlement of that case), the court concludes that the document is properly authenticated by the deposition testimony of David B. Allen.

---

[1] Specifically, the court need not discuss further defendant's motion *in limine* No. 1 concerning "take home" exposure. The court has already determined that Boyer's exposure based on asbestos fibers on his own work clothing would fall within the exclusivity provision of Wisconsin's Workers Compensation Act. While Dr. Anderson may consider cumulative exposure, the jury will be instructed that it is not to consider Boyer's take home exposure in determining whether non-occupational exposure to asbestos constituted a substantial contributing factor. Motion *in limine* No. 3 is denied for the same reasons as defendant's motion *in limine* No. 5 in *Pecher*, though defendant remains free to argue to the jury that it should only consider post-1975 emissions in light of the fact that Boyer did not move within a 1.25 mile radius of the plant until 1975. Motion *in limine* No. 4, which concerned landfills and dump truck routes, is granted in part and denied in part for the same reasons as in *Pecher*. Plaintiff is warned, however, that it must lay a foundation outside the jury's presence that ties such evidence to Boyer's exposure before offering it as evidence at trial. Motions *in limine* Nos. 5, 6 and 9 warrant no further discussion.

Given that the document was created over 40 years ago, it is hardly surprising that Allen does not remember every detail. Nevertheless, he testified at his deposition that he created the document in his capacity as Weyerhaeuser's corporate Environmental Resources Group. Specifically, Allen testified that he spent two days collecting notes at the Marshfield plant, accurately quoting or summarizing the documents he reviewed, and that he typed the 1975 report himself. His deposition testimony forms a sufficient basis to authenticate the document.

As for the hearsay within hearsay objection, there appear to be several discrete categories. First, as to the reported statements of *other* Weyerhaeuser employees, those statements also are not hearsay as statements of a party opponent under Rule 801(d)(2), either because of the status of the original employee or adoption by Allen. (*See also* 3/7/16 *Pecher* Hr'g Tr. (dkt. #523) p.6.) Second, the court agrees with defendant that the document's statements as to what members of the community reported constitutes hearsay and cannot be introduced for the truth of the matter asserted -- that there *were* emissions into the community. Instead, those statements may only be considered by the jury as evidence of Weyerhaeuser's knowledge of emissions into the community, a point plaintiff appears to concede. The third and final challenge concerns entries regarding communications and orders with regulators. Plaintiff argues that these entries are exceptions to hearsay as public records. (Pl.'s Opp'n (dkt. #531) 15.) This argument proves too much. Portions of the document may *not* be introduced to prove the truth of the matter asserted. In particular, these records may not be offered to prove that defendant was or was not in compliance with certain regulations. The court will hear

argument as to whether this evidence has any relevance to the jury's finding of Weyerhaeuser's knowledge of regulatory standards, especially in light of the court's decision to exclude references to governmental standards to establish the standard of care.

Accordingly, defendant's general objections to the D.B. Allen document on authentication and hearsay are OVERRULED. Defendant's hearsay within hearsay objection to statements of other Weyerhaeuser employees is also OVERRULED. Defendant's hearsay within hearsay objection as to statements of community members is SUSTAINED, though those statements may be introduced for some other valid purpose other than the truth of the matter asserted. Finally, the court will RESERVE on defendant's hearsay within hearsay objection to statements attributed to regulators.

### B. No. 7: Expert Testimony Regarding Inadmissible Evidence

Related to the above motion, defendant also seeks to exclude plaintiff's experts from testifying about their reliance on inadmissible evidence. For example, defendant would exclude experts from referring to reliance on statements in the D.B. Allen document of community members about asbestos emissions in support of an opinion that there were actual asbestos emissions. For support, defendant relies on Federal Rule of Evidence 703, which provides in pertinent part:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be

7

> inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Based on this rule, defendant argues that certain facts or data on which plaintiff's experts relied should not be disclosed to the jury because the probative value of those facts do not substantially outweigh their prejudicial effect. Indeed, defendant not only seeks to bar plaintiff's experts from disclosing facts or data about a contemporaneous record of statements by members of the community regarding dusty, but also of (1) landfills, (2) certain D.B. Allen entries, and (3) community exposure pre-dating 1975, when Boyer moved into a house located within 1.25 miles from the plant. Plaintiff's response is wholly inadequate, entirely failing to address the balancing required of the court under Rule 703. Accordingly, the court will RESERVE on this motion and take it up during the final pretrial conference.

### C. No. 8: Untimely Damages Evidence

Next, defendant seeks to exclude damages evidence on the basis that plaintiff failed to (1) provide any computation as required under Federal Rule of Civil Procedure 26(a) and (2) produce certain medical bills reflecting treatment at Marshfield Clinic, any bills for funeral expenses, or any evidence in support of a lost wages claim. In response, plaintiff acknowledges her failure to provide a computation and does not challenge defendant's claim that plaintiff also failed to produce bills and other evidence in support of her claims.

While the court would be willing to excuse the failure to provide a computation if the underlying documents provided a sufficient basis for defendant to do its own computation, plaintiff only produced certain medical bills, not all bills, *and* failed to present any evidence in support of reimbursement for funeral expenses or lost wages. Instead, plaintiff simply requests "that she be able to supplement her Rule 26(a) disclosures with the requisite computations prior to trial and that evidence related to medical, funeral, or lost wages damages not be excluded." (Pl.'s Opp'n (dkt. #528) 7.)

Plaintiff should have produced most, if not all, of these documents before the close of discovery at the end of August, or at least should have sought leave to file them late, given the proximity of Mr. Boyer's death to the close of discovery. Perhaps if plaintiff had served these documents at the same time she filed her opposition to defendant's motion, the court would be more understanding. Plaintiff failed to do any of these things and still, as of the date of the filing of her opposition on April 22, 2016, plaintiff has not produced the necessary documentation. Accordingly, now on the eve of trial, this motion will be GRANTED with respect to any damages for which plaintiff has failed to provide the necessary documentation. Plaintiff's failure, however, to provide a computation will not bar her from seeking damages for those medical expenses reflected in bills that plaintiff previously produced, if itemized, annotated and provided in a 1006 summary, along with copies of the previously produced bills.

Defendant also seeks to exclude approximately 40 photographs of Milton Boyer and his family that were not produced until April 1, 2016. As just mentioned, discovery closed on August 31, 2015, the same day as Mr. Boyer's death. Defendant contends that

these photographs should have been disclosed as part of the initial disclosures under Rule 26(a), or, in any event, in response to discovery requests -- though defendant fails to direct the court to any specific requests. While plaintiff certainly could have anticipated the use of photographs of Mr. Boyer, the court will not fault plaintiff for the failure to do so since there would appear to be no prejudice by this late production. The court will, however, direct plaintiff to produce a reduced number of pictures to be offered into evidence during the damages phase of trial also by 5 p.m. on May 6, 2016. Accordingly, this part of the motion is DENIED.

### D. Nos. 10 and 11: Videotape Evidence

In motion *in limine* No. 10, defendant seeks to exclude photographs and videos of Mr. Boyer until the damages phase of trial, and seeks to exclude any "day-in-the-life" video as unduly prejudicial. In response, plaintiff indicates no plan to show a "day in the life" video, but rather simply seeks to display the family photos referenced above, thus mooting that concern. Moreover, plaintiff does not seek to display any photos during the liability phase. Assuming the photos are properly authenticated and reduced in number, plaintiff is allowed to introduce them during the damages phase. As such, defendant's motion no. 10 is DENIED.

In motion *in limine* No. 11, defendant also seeks to exclude portions of Mr. Boyer's videotaped deposition that are not part of his designated testimony -- namely, a several minute clip of his tractor being driven outside of his home. In response, plaintiff contends that she did not designate this portion and has no intent to play it; rather, she

simply seeks to display relevant portions of his deposition. Accordingly, this motion is DENIED as moot.

In all other respects, defendant's motions in limine are DENIED IN PART AND GRANTED IN PART for the same reasons as explained in the court's opinions and orders in *Pecher*. (*See Pecher*, '147 dkt. ##477, 480.)

### III. Defendant's Motion to Supplement Expert Reports

Finally, defendant seeks leave to file three supplemental expert reports. Two concern defendant's expert Dr. Vincent Roggli, a pathologist. In the first report, Roggli offers supplemental opinions based on Milton Boyer's autopsy results. Plaintiff does not oppose this supplementation. Therefore, that portion of the motion is GRANTED as unopposed.

In addition, defendant seeks to file a supplemental report by Roggli in which he opines on causation. Defendant contends that his opinion on causation is consistent with his July 2015 deposition testimony. While perhaps true, defendant should have filed a motion to supplement his report immediately following his deposition, rather than delay and seek leave on the eve of trial. In *Pecher*, defendant criticized the plaintiff for the same conduct -- attempting to interject Dr. Anderson's testimony on a new causation theory based on deposition testimony. The court precluded Dr. Anderson from testifying on the basis that he should have sought leave to supplement his report. Apparently failing to appreciate the irony, defendant purports to rely on this ruling to argue that it is now doing what the court suggested, but seeking leave to supplement some nine months

11

after a deposition and on the eve of trial is the *opposite* of the court's suggestion. Indeed, it is practically the same as plaintiff's conduct of not seeking leave at all. As such, defendant's request to file a supplemental report by Roggli on causation is DENIED.

Finally, defendant seeks leave to supplement the report of Robert C. Adams, CIH, by filing the same Adams report filed in the *Pecher* case. As context, in this case (as well as in *Sydow*), defendant was required to file its expert disclosures by March 23, 2015. In *Pecher*, however, the deadline was roughly nine months later, December 12, 2015. Adams submitted reports in both cases, but his report in *Pecher* contained two new opinions that defendant contends were based on deposition testimony and evidence produced during the period between those two dates. In the first opinion, Adams states that evidence of "dust" cannot be construed as evidence of asbestos emissions because there is no way of ascertaining from visual observation whether the dust contained asbestos. In the second opinion, Adams considers soil samples taken by plaintiff's expert, Frank Parker.

Defendant should have sought leave to supplement its expert report in December 2015, when it filed the Adams report in the *Pecher* case. Still, given its expert Frank Parker's failure to produce the soil results timely, when coupled with the fact that plaintiff's counsel in the *Pecher* case had an opportunity to either supplement his expert report in response to Adams' two new theories or depose Adams, the court concludes that plaintiff was not prejudiced by the delay. Accordingly, defendant's motion to file Adams' supplemental expert report is GRANTED.

ORDER

IT IS ORDERED that:

1) Defendant Weyerhaeuser Company's motions *in limine* (dkt. #497) are GRANTED IN PART, DENIED IN PART, AND RESERVED IN PART.

2) Plaintiff Kathy Boyer's motion *in limine* to reconsider rulings on government regulations as evidence of negligence (dkt. #504) is DENIED.

3) Plaintiff's motions *in limine* (omnibus) (dkt. #506) are GRANTED IN PART AND DENIED IN PART.

4) Defendant's motion for leave to file supplemental expert reports (dkt. #510) is GRANTED IN PART AND DENIED IN PART.

5) On or before 5 p.m. on May 6, 2016, plaintiff shall provide defendant with a reduced number of pictures to be offered into evidence during the damages phase of trial.

Entered this 5th day of May, 2016.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge